## D. SULLIVAN ET AL. V. D. R. FANT AND WIFE.

### Decided May 13, 1908.

**1.—Judgment—Community Debt—Wife's Separate Property.**

A judgment against the husband alone for a community debt with foreclosure of a mortgage lien on certain property, is not conclusive against a claim by the wife that said property was her separate estate, when she was not a party to the suit in which the judgment was rendered.

**2.—Husband and Wife—Plea of Misjoinder—Construction.**

In a suit by the wife joined by her husband for the recovery of property alleged to be her separate property, a plea of misjoinder of parties considered, and held properly overruled.

**3.—Statute of Frauds—Insolvent Debtor—Gift to Wife—Who May Avoid.**

A gift by an insolvent debtor to his wife can only be avoided by a creditor prejudiced thereby, in an appropriate proceeding by him. The donee takes the title to this property subject to the demands of creditors.

**4.—Same—Trustee as Party to Fraud.**

An agent or trustee through whom a fraudulent gift of property is being effectuated can not, after accepting the title for that purpose, have the gift declared void when the effect would be to enable him to hold the property for himself.

**5.—Express Trusts—Proof.**

Express trusts in land are not within our statute of frauds and can exist and can be proved by parol.

**6.—Agency—Ratification—Evidence.**

Upon an issue of agency and the ratification of the acts of the alleged agent, evidence considered, and held sufficient to support a verdict in favor of the alleged agency and ratification.

**7.—Practice—Objection to Testimony.**

Where the testimony of a witness upon a given subject is partly competent and partly incompetent, an objection to the whole of the testimony is properly overruled.

**8.—Same—Exclusion of Testimony.**

Where, in ruling upon an objection to testimony and in excluding the same, the court requires the stenographer to read over the objectionable portion and instructs the jury not to consider the portion so read, the action of the court was not subject to the objection that by the repeated reading the objectionable testimony was impressed upon the jury, thereby causing them to consider it instead of discarding it.

**9.—Trial—Order of Proof—Impeaching Testimony.**

Where it appears from the allegations of defendant's answer that certain testimony would be offered by defendant in denial of plaintiff's cause of action, it is not reversible error for the trial court to permit the plaintiff in the first instance to introduce testimony tending to impeach the testimony which it is apparent defendant would subsequently introduce and which was in fact introduced. An appellate court will consider the record as a whole and pass upon such questions in the light of the record as it stood when the case was submitted to the jury.

**10.—Agency—Conspiracy—Proof.**

In an action to set aside a conveyance on the ground that the same was procured by fraud, evidence considered, and held sufficient to support a finding of the jury upon issues of agency and conspiracy. A prima facie case of agency or conspiracy being made, the declarations of the agent or conspirator are admissible against the principal or co-conspirator.

**11.—Same—Direct Proof.**

It is not error to permit a party to a suit to testify that a certain person was not his agent in the transaction out of which the litigation arose, when the party testifies fully to the facts upon which the statement was predicated.

**12.—Deed—Fraud—Competent Evidence.**

The action being to set aside a deed which the defendant obtained at a trustee's sale without competition, it was proper to permit the plaintiff to testify that he made no effort to get bidders or buyers at said sale because he relied on the promise of the defendant to hold the land in trust for him after the purchase. Such testimony was not subject to the objection that it was a conclusion of the witness.

**13.—Witness—Impeachment—Corroborative Statements.**

Whenever a witness is sought to be impeached by showing that he has made statements inconsistent with his testimony at the trial, and the tendency of the impeaching evidence is to show that the testimony of the witness is fabricated, it is proper to admit evidence of former statements which corroborate his testimony, provided such statements were made at a time when no motive or influence to fabricate, existed. Testimony considered and rule applied.

**14.—Trust Agreement—Evidence.**

In an action against a purchaser of land at trustee's sale to enforce specific performance of an agreement to hold the land in trust for the debtor, testimony that the debtor dissuaded persons from bidding at said sale was material and relevant in proof of an allegation that the debtor relied and acted upon the trust agreement, and the testimony was not subject to the objection that it was hearsay.

**15.—Same.**

A deed can not be set aside or reformed except upon allegations of fraud, mistake and the like, but these allegations are not essential in order to charge the grantee in a deed with a trust in the land. Rule applied.

**16.—Verdict—Special Issues—Practice.**

When a case is submitted upon special issues it is proper for the court to refuse to submit an issue which is not involved in the law of the case.

**17.—Appeal—Unsigned Bill of Exception.**

An unsigned bill of exception will not be considered on appeal.

**18.—Verdict—Special Issue—Prejudicial Error.**

Where a case is tried upon special issues it is reversible error for the court to submit to the jury an issue calculated to convey to the mind of the jury the impression that there was evidence which would support a finding on such issue.

**19.—Appeal—Cross Assignment—Practice.**

A cross assignment by an appellee will not be considered when it has not been filed in the trial court or such filing been waived and when the matter presented by it is not fundamental error.

**20.—Same—Additional Brief.**

Assignments of error omitted from appellant's brief and presented for the first time in an additional brief, will not be considered unless presented by consent of appellee.

ON MOTION FOR REHEARING.

**21.—Appeal—Taxing Cost—Rule.**

Unless it clearly appears that the error for which a case is reversed is one which the trial court would have corrected had it been called to the attention of the court, the cost of the appeal should be taxed against the appellee.

**22.—Debt—Rate of Interest—Pleading.**

Where, in a suit involving the settlement of accounts between the plaintiff as debtor and the defendant as creditor, the plaintiff admits or insists in his pleading that the defendant be allowed ten percent interest on his claims such plaintiff will not be heard afterwards to say that the defendant should have been allowed only the legal rate of interest.

**23.—Practice—Filing Conclusions of Fact.**

The failure of the trial judge to file his conclusions of fact is not cause for reversal when there is a statement of facts in the record.

**24.—Special Issues—General Verdict—Practice.**

When a case is submitted upon special issues it is proper for the trial court to refuse a charge calling for a general verdict.

**25.—Same—Finding by Court—Judgment.**

When a case is tried upon special issues the court may make a finding from the testimony to supply a finding upon a material issue which was not submitted to the jury.

**26.—Fraudulent Conveyance—Burden of Proof—Evidence.**

Fraud should be proved with some degree of certainty, and the burden of proof is upon the party alleging it. Upon an issue of fraud as to a gift made by a debtor, evidence considered, and held to require a finding against the allegation of fraud.

**27.—Trial—Cross-Examination—Repetition of Improper Testimony—Waiver.**

Where, upon cross examination a party causes a witness to repeat testimony which he objected to on direct examination, the objection is thereby waived.

Appeal from the 57th Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Newton & Ward, John C. Sullivan* and *Nat B. Jones,* for appellant.— The court erred in refusing to give to the jury special charge No. 2, requested by defendants, which is as follows, to wit: "In this cause now come the defendants and request the court to instruct the jury as follows: 'You are instructed that the judgments rendered in causes Nos. 16584 and 15506 are res adjudicata of the issues and matters involved in this suit, and you are, therefore, instructed to find a verdict in favor of the defendants.'" Foster v. Wells, 4 Texas, 107; Weathered v. Mays, 4 Texas, 387; Neill v. Tarin, 9 Texas, 255; Lee v. Kingsbury, 13 Texas, 69; Johnson v. Murphy, 17 Texas, 216; Girardin v. Dean, 49 Texas, 247; Nichols v. Dibrell, 61 Texas, 539; Ewing v. Wilson, 63 Texas, 88; Hanrick v. Gurley, 93 Texas, 480; Thompson v. Lester, 75 Texas, 523; Beer v. Thomas, 13 Texas Civ. App., 35; Freeman v. McAninch, 87 Texas, 136; Rackley v. Folkes, 89 Texas, 614; Moore v. Snowball, 98 Texas, 24; Northern Pac. Ry. Co. v. Slaght, 205 U. S., 122; s. c. 27 Sup. Rep., 444; Howard v. Huron, 26 L. R. A., 498-500; Reich v. Cochran, 37 L. R. A., 807; Gates v. Preston, 41 N. Y., 113; Blair v. Bartlett, 75 N. Y., 150.

It was immaterial as to conclusiveness of the judgments that plaintiff, Mrs. Lucie A. Fant, was not a party to the judgment recovered by D. Sullivan & Co. against D. R. Fant: 2 Black on Judgments, sec. 543; Girardin v. Dean, 49 Texas, 243; 2 Black on Judgments, secs. 614-616.

The court erred in overruling defendants' motion for a new trial because the finding of the jury and its answer to question No. 2, submitted to it by the charge of the court, is without any evidence whatsoever to sustain it, and such finding is certainly, if there be any evidence tending to sustain it, contrary to and against the overwhelming weight and preponderance of the testimony, in this: That the evidence shows that Dr. Graves, in the matter submitted in said question No. 2, was not acting as the agent of defendants, or any of them, but was acting solely as the agent of plaintiffs, and that defendants, nor any of them, ever authorized in any manner the said Graves to make the contract or agreement as found by the jury. Willis v. Lewis, 28 Texas, 192; Houston & T. C. Ry. Co. v. Schmidt, 61 Texas, 283; Missouri Pac. Ry. Co. v. Somers, 78 Texas, 441; Mutual L. Ins. Co. v. Tillman, 84 Texas, 35; International & G. N. Ry. Co. v. Arias, 10 Texas Civ. App., 194; League v. Trepagnier, 13 Texas Civ. App., 526; Harnage v. Berry, 43 Texas, 569; Schoate v. San Antonio & A. P. Ry. Co., 90 Texas, 88; Joske v. Irvine, 91 Texas, 581.

To render the declarations of an agent admissible against the principal such declarations must have been made concerning an act within the scope of the authority of the agent and at the time that the act was being performed by the agent. If the declarations be made before or after the act was done, it is not a part of the res gestae; therefore, not admissible. Statements, representations or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance or so soon as to be in reality a part of the transaction. Declarations, statements or admissions of

an agent made before the performance of an act was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, are not admissible. The declarations or statements of the witness, Dr. Graves, to the witness W. W. Jones were not made under the above facts or circumstances so as to make them admissible. The court, therefore, erred in permitting said statements and declarations of Dr. Graves to go in evidence. Waggoner v. Snody, 98 Texas, 515-516; San Antonio & A. P. Ry. v. Robinson, 73 Texas, 287; Latham v. Pledger, 11 Texas, 445, et seq.; Wright v. Doherty, 50 Texas, 42; Missouri Pac. Ry. v. Simons & McCarthy, 6 Texas Civ. App., 625; White v. San Antonio Waterworks Co., 9 Texas Civ. App., 474; Mecham on Agency, sec. 714; Reinhard on Agency, secs. 350-353; 2 Story on Evidence, secs. 359, 360.

While it is proper for the court to withdraw from the jury by an instruction testimony improperly admitted, and to instruct the jury to disregard the same, yet the court erred in requiring the stenographer to repeatedly read the objectionable testimony to the jury, for the reason that by repeating so often this testimony to the jury, the only effect it would have would be to impress it upon the jury, thereby causing them to consider the same instead of discarding it from their consideration. Gulf, C. & S. F. Ry. Co. v. Levy, 59 Texas, 543; Tucker v. Hamlin, 60 Texas, 175; McCauley v. Long & Co., 61 Texas, 80, 81; Smyth v. Caswell, 67 Texas, 576, 577.

The property and the subject matter of this suit being the community property of plaintiffs, D. R. Fant and Lucie A. Fant, his wife, the plaintiff, Mrs. Lucie A. Fant, was an improper party and was wrongfully joined in this action, and the court erred in overruling defendants' plea of misjoinder of parties predicated upon the proposition that Mrs. Fant was neither a necessary or a proper party to this action. Ezell v. Dodson, 60 Texas, 331; Gulf, W. T. & P. Ry. v. Goldman, 8 Texas Civ. App., 259; Rice v. Mexican Nat. Ry. Co., 8 Texas Civ. App., 131; Western Union Tel. Co. v. Cooper, 71 Texas, 511; Gallagher v. Bowie, 66 Texas, 265. As to subject matter in controversy being community, see, Ezell v. Dodson, 60 Texas, 331; Cox v. Miller, 54 Texas, 22; Green v. Ferguson, 62 Texas, 529; Smith v. Strahan, 16 Texas, 324; Edwards v. Brown, 68 Texas, 333, et seq.

If the contract of January 7, 1904, was ever made, the consideration moving from the Fants in such contract was a community consideration, and whatever benefits accrued in said contract belonged to the community estate of Fant and wife; if Fant and the parties attempted to vest the fruits of that contract in Mrs. Fant as her separate property, and if, in law, it could have that effect, then such contract was fraudulent and void in law, for the reason that at the time of the making of the contract Fant was insolvent, and the necessary effect of that contract, so far as it attempted to vest the rights under it in Mrs. Fant as her separate property, was to hinder, delay and defraud the creditors of D. R. Fant. In such case the law presumed it fraudulent and the evidence raised that intent, and the court erred in failing, upon request of defendants' counsel, to submit that issue to the jury, particularly in view of the fact that Fant was not only insolvent, but after the making of said contract no assets of any character remained in his hands sufficient

to satisfy his debts in whole or in part. Briscoe v. Bronaugh, 1 Texas, 326; Dixon v. Sanderson, 72 Texas, 362, 363; Dosche, Admr., v. Nette, 81 Texas, 268, 269; Woodall v. Rudd, 41 Texas, 381, 382.

Upon the proposition that an executory contract void under the statute of frauds will not be enforced by the court, and that the law will leave the parties where it finds them: Hoeser v. Kraeka, 29 Texas, 452, 453; Eastham v. Roundtree, 56 Texas, 114, 115; Farrell v. Duffy, 5 Texas Civ. App., 438, 439.

That whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of the trial, or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, provided such declarations were made at a time when no such motive or influence existed. Aetna Ins. Co. v. Eastman, 95 Texas, 37; Kelley-Goodfellow Shoe Co., etc., v. Liberty Ins. Co., 8 Texas Civ. App., 232; Levy v. Fischl, 65 Texas, 318; Bailey v. State, 9 Crim. App., 98; Williams v. State, 24 Crim. App., 666; Goode v. State, 32 Crim. App., 508; Easterwood v. State, 34 Crim. App., 407; Mitchell v. State, 36 Crim. App., 278; Campbell v. State, 37 Crim. App., 572; Jones v. State, 38 Crim. App., 104.

The court erred in permitting plaintiffs' witness, D. S. Combs, to testify, over objections of defendants, to a conversation had between him and D. R. Fant in the spring of 1904 with reference to bidding at the trustee's sale on the lands situated in Brewster and Pecos Counties, and which said conversation was as follows: "I asked Mr. Fant when the land was going to be sold; I told him I thought I would go out and bid on it. He said there was no use in your going out, Mr. Combs, you can't buy that land—we will run it up so high there is no use in going, you can't bid on it. So I just dropped it then and didn't go." Lewis v. Bell, 40 S. W., 747; Tucker v. Hamlin, 60 Texas, 176; Rankin v. Bell, 85 Texas, 32; Ross v. Kornrumpf, 64 Texas, 395; McClure v. Sheeks' Heirs, 68 Texas, 429; Western U. Tel. Co. v. Burgess, 56 S. W., 240.

The purpose and intent of the grantor, D. R. Fant, as expressed in the deed of confirmation, were contained in said instrument in contractual stipulations and recitals; such contractual recitals and stipulations could not be altered or varied by parol testimony; hence, the deed of confirmation by virtue of these contractual stipulations and recitals vested an absolute title to the property in said deed of confirmation mentioned in D. Sullivan and in D. J. Sullivan, the grantee of D. Sullivan; the legal effect of said instrument was to vest in D. Sullivan and his grantees a perfect legal title, and as the legal effect of the deed of confirmation could not be varied by parol testimony, the court erred in its judgment in holding that D. Sullivan and D. J. Sullivan took no title, and erred in divesting them of the title to the property in controversy. Kahn v. Kahn, 94 Texas, 117, et seq.; Houston & T. C. Ry. v. McKinney, 55 Texas, 186, et seq.; Galveston, H. & S. A. Ry. v. Pfeuffer, 56 Texas, 72, 73; Eastline R. Co. v. Garrett, 52 Texas, 138, 139; Ragsdale v. Mays, 65 Texas, 257; Burrows v. Rust, 44 S. W., 1019; Bigham v.

Bigham, 57 Texas, 240; Salado College v. Davis, 47 Texas, 137; Heffron v. Cunningham, 76 Texas, 318, et seq.

The court erred in overruling defendants' motion for a new trial, because the judgment of the court is not confined to the issues submitted to and passed upon by the jury, but is predicated upon additional matters and things not passed upon by the jury or found by the court. Rev. Stats., arts. 1331, 1333; Allen v. Frost, 71 S. W., 768; Moore v. Moore, 67 Texas, 294; Galveston, H. & S. A. Ry. v. Botts, 22 Texas Civ. App., 610; Waller v. Liles, 96 Texas, 21; Aultman & Taylor M. Co. v. Cappleman, 81 S. W., 1244; York v. Hilger, 84 S. W., 1118; Union Carpet L. Co. v. Miller & Co., 86 S. W., 653.

*Botsford, Deatherage & Young, Robert L. Ball* and *Francis J. Kearful,* for appellees.—The judgments, referred to in the first assignment of error, in favor of D. Sullivan & Co. against D. R. Fant, are not res adjudicata of the issues involved in this suit, because this suit is one to recover the separate property of Lucie A. Fant, who was not a party to those suits. Story v. Marshall, 24 Texas, 305, 307; Evans v. Opperman, 76 Texas, 293, 299; Richardson v. Hutchins, 68 Texas, 81, 84; Hutchison v. Mitchell, 39 Texas, 488, 493; Smith v. Boquet, 27 Texas, 507, 512; Read v. Allen, 56 Texas, 182, 194; Wilson v. Johnson, 94 Texas, 272, 276; Frank v. Frank, 25 S. W., 819.

No charge to the jury was requisite or proper as to whether or not the judgments referred to in appellants' requested charge No. 2 were res adjudicata of the issues and matters involved in this suit. Rev. Stats., art. 1331, as amended, Acts 1897, p. 15; Moore v. Pierson, 93 S. W., 1007, 1008, 94 S. W., 1132, 1134.

The jury were warranted in finding, in answer to question No. 2, that "Graves was acting as agent of D. Sullivan & Co." in making the agreement found in answer to question No. 1, because the evidence shows that Graves was authorized by D. Sullivan & Co. to make said agreement, or that D. Sullivan & Co. subsequently ratified it. International Harvester Co. v. Campbell, 96 S. W., 93, 96; Clarkson v. Reinhartz, 70 S. W., 111, 112; Barbee v. Spivey, 32 S. W., 345, 346; Bexar Bldg. & Loan Assn. v. Newman, 25 S. W., 461, 463; Jesson v. Texas Land & Loan Co., 3 Texas Civ. App., 25.

Agency can be proved by the acts and declarations of the alleged agent which, as in this case, were shown to have been known, or, because of their notoriety, may fairly be presumed to have been known, to the alleged principal. International Harvester Co. v. Campbell, 96 S. W., 93, 96; Pullman Palace Car Co. v. Nelson, 22 Texas Civ. App., 223; Missouri Pac. Ry. Co. v. Simons, 6 Texas Civ. App., 621.

The court did not err in receiving the testimony of W. W. Jones as to the declarations made to him by Graves, because the evidence shows that said declarations were made by Graves in the performance of his agency, and were therefore a part of the res gestae. McAlpin v. Cassidy, 17 Texas, 450, 463; Chilson v. Reeves, 29 Texas, 276, 277, 281; Loomis v. Satterthwaite, 25 S. W., 68, 70; Stovall v. Farmers & Merchants Bank, 8 Smedes & M. (Miss.), 305; 47 Am. Dec., 85, 86, 87; Cole v. Bean (Ariz.), 25 Pac., 538, 539; Porter v. Adams, 115 Ill. App., 439; Am. Dig. 1905B, col. 3306, sec. 6c.

The court did not err in receiving the testimony of Jones as to the declarations made to him by Dr. Graves, even if said declarations were not within the scope of Dr. Graves' agency, or known to Sullivan & Co., because the evidence shows that Sullivan & Co. were enabled by said declarations to acquire the mortgaged property at the foreclosure sales for an inadequate price without opposition, and they are therefore estopped to deny that said declarations were within the scope of Dr. Graves' authority. Henderson v. San Antonio & M. G. R. R. Co., 17 Texas, 560, 575, 576; Barbee v. Spivey, 32 S. W., 345-347; Fraternal Army v. Evans, 215 Ill., 629, 74 N. E., 689, 690; Paine v. Wilcox, 16 Wis., 217; Eadie v. Ashbaugh, 44 Iowa, 519, 520; Meehan v. Forrester, 52 N. Y., 279; Morrow v. Jones, 41 Neb., 867, 60 N. W., 369, 372; Tower v. Fetz, 26 Neb., 706, 18 Am. St., 795, 798, 42 N. W., 884; Busch v. Wilcox, 82 Mich., 336, 21 Am. St., 563, 47 N. W., 328, 329.

The court did not err in receiving the testimony of Jones as to the declarations made to him by Dr. Graves, because the testimony shows that said declarations were made in pursuance of a common design between Dr. Graves and D. Sullivan to obtain the property of plaintiffs by fraud. Brown v. Chenoworth, 51 Texas, 469, 479; Dungan v. State, 39 Texas Crim. Rep., 115; San Antonio Gas Co. v. State, 22 Texas Civ. App., 118, 55 S. W., 14; Hughes v. Waples-Platter Grocer Co., 60 S. W., 981, 982, 61 S. W., 14; McCarty v. Hartford, F. Ins. Co., 75 S. W., 934, 936; Stovall v. Farmers' & M. Bank, 8 Smedes & M. (Miss.), 305, 47 Am. Dec., 85, 87; Hogue v. McClintock, 76 Ind., 205, 209; McCaskey v. Graff, 23 Pa. St., 321, 62 Am. Dec., 336, 337.

The court did not err in having read and re-read that part of the testimony of W. W. Jones which was stricken out as not admissible, because the same was intermingled in the answer of the witness with admissible testimony, and such proceeding was necessary in order to instruct the jury with precision in reference thereto, so that no uncertainty might remain as to what part was proper and what part improper. The error, if any, in receiving the testimony of W. W. Jones as to the declarations of Dr. Graves, was waived by the appellant, in that it appears from the record that the testimony here objected to was also brought out by the appellants on their cross-examination of the witness, W. W. Jones. Eastham v. Hunter, 98 Texas, 560; Gammel-Statesman Pub. Co. v. Monfort, 81 S. W., 1029, 1031, 1032; Pac. Express Co. v. Needham, 94 S. W., 1070, 1071, 96 S. W., 15; New Orleans Furniture Mfg. Co. v. Hill Furniture Co., 94 S. W., 148; Morrison Mfg. Co. v. Bryson (Iowa), 103 N. W., 1016; Gautieri v. Romano (R. I.), 66 Atl., 652; Tuttle v. Moody (Sup. Ct.), 97 S. W., 1037; Brown v. Mitchell, 88 Texas, 350, 356; Rollins v. O'Farrel, 77 Texas, 90, 93; Galveston, H. & S. A. Ry. Co. v. Stoy, 99 S. W., 135, 137; Smyth v. Caswell, 67 Texas, 567, 576; Church v. Waggoner, 78 Texas, 200, 202; Galveston, H. & S. A. Ry. Co. v. Duelm, 23 S. W., 596, 602, 24 S. W., 334, 337, 86 Texas, 450, 454; Jones v. Reus, 24 S. W., 675, 677; Galveston, H. & S. A. Ry. Co. v. Clark, 21 Texas Civ. App., 167; Galveston, H. & S. A. Ry. Co. v. Still, 100 S. W., 176, 181; Patterson v. Frazer, 93 S. W, 146, 149, 94 S. W., 324; Missouri, K. & T. Ry. Co. v. Simmons, 12 Texas Civ. App., 500.

There being other competent proof of Dr. Graves' agency to make the

agreement of January 7, 1904, and also of the subsequent ratification of that agreement and acceptance of the benefits thereof by Sullivan & Co. (being evidenced by all the circumstances showing, and being abundantly sufficient to sustain the findings of the jury as to, such agency), the statements of Dr. Graves, made to Mrs. Fant, at that time as to his authority from D. Sullivan were admissible as a part of the res gestae. Loeb v. Crow, 15 Texas Civ. App., 537; Stiff v. Fisher, 2 Texas Civ. App., 346; International Harvester Co. v. Campbell, 96 S. W., 93, 96; Pullman Palace Car Co. v. Nelson, 22 Texas Civ. App., 223; Missouri Pac. Ry. Co. v. Simons, 6 Texas Civ. App., 621; Barbee v. Spivey, 32 S. W., 345-347; Fraternal Army v. Evans, 215 Ill., 629, 74 N. E., 689, 690; Henderson v. San Antonio & M. C. Railroad Co., 17 Texas, 560, 576; Bexar Building & L. Assn. v. Newman, 25 S. W., 461, 464; Singer Mfg. Co. v. Christian (Pa. St.), 60 Atl., 1087, 1089; Chattanooga, etc., Ry. Co. v. Davis, 89 Ga., 708, 15 S. E., 626; Small v. Williams (Ga.), 13 S. E., 589, 590; Christ v. Garretson State Bank (S. D.), 82 N. W., 89; Bergtholdt v. Porter Bros. Co. (Cal.), 46 Pac., 738, 740; Nowell v. Chipman (Mass.), 49 N. E., 631; Parker v. Bond (Ala.), 25 So., 898, 902.

The court did not err in admitting the testimony of Mrs. Fant as to the acts and declarations of Graves without preliminary proof of agency or ratification. Rains v. Hood, 23 Texas, 555, 557; Johnson v. Brown, 25 Texas, Sup., 120, 127; Myers v. Maverick, 27 S. W., 1083; Caraway v. Citizens' Nat. Bank, 29 S. W., 506, 508; Bates v. Tower (Cal.), 37 Pac., 385, 386; C. & C. Electric Motor Co. v. Frisbie (Conn.), 33 Atl., 604, 608; Ferguson v. McBean (Cal.), 35 Pac., 559, 560; Campbell v. Sherman (Mich.), 14 N. W., 484; Barbee v. Spivey, 32 S. W., 345-347.

The court did not err in permitting Mrs. Fant to testify that Dr. Graves was not her agent, because said statement of the witness was made in connection with the facts upon which it was predicated, such facts being also fully testified to by numerous other witnesses. Smith v. Eckford, 18 S. W., 210, 214; Whitfield v. Diffie, 105 S. W., 324, 327.

The court did not err in admitting the testimony of Col. Fant, because said testimony was the best and most direct evidence upon the issue made by the pleadings that he refrained from any effort to get bidders or buyers at the trustee's sales by reason of his reliance in good faith upon the trust agreement of January 7, 1904, and upon the authority of Graves from Sullivan & Co. to make that agreement. Hamburg v. Wood, 66 Texas, 168, 176; Robertson v. Gourley, 84 Texas, 575, 578, 579; Receivers v. Armstrong, 4 Texas Civ. App., 146; Wade v. Odle, 21 Texas Civ. App., 656; Peightal v. Cotton States Bldg. Co., 25 Texas Civ. App., 390; Whitfield v. Diffie, 105 S. W., 324, 327.

The court did not err in excluding the testimony of Wm. Green as to statements made to him by Dr. Graves in corroboration of Dr. Graves' testimony, because said statements, having been made "in the latter part of 1905 or the early part of 1906," were at a time when the purposes of Dr. Graves' agency with reference to the acquisition by D. Sullivan & Co. of the Fant properties had been fully consummated, and when the witness was actuated by the same motives and influences which induced him to deny under oath the acts and statements testified

to as having been made by him in order to effectuate the purpose of his agency.   Aetna Ins. Co. v. Eastman, 95 Texas, 34, 37, and cases there cited; Rice v. State, 50 Texas Crim. Rep., 648.

The court did not err in receiving the testimony of D. S. Combs, because said testimony bore directly upon the issue made by the pleadings; that the plaintiffs relied on the trust agreement of January 7, 1904, with the result that D. Sullivan and D. Sullivan & Co. were enabled to bid off the mortgaged properties at the trustee's sales for a very inadequate price, and without opposition.   Chilson v. Reeves, 29 Texas, 276, 277, 281; Smith v. Eckford, 18 S. W., 210, 217; Loomis v. Satterthwaite, 25 S. W., 68, 70; Brown v. Jackson, 40 S. W., 162, 164; Paine v. Wilcox, 16 Wis., 217.

As to engrafting a parol trust on an absolute deed:   James v. Fulcrod, 5 Texas, 512, 516-518; Mead v. Randolph, 8 Texas, 191, 198; Miller v. Thatcher, 9 Texas, 482, 483; Clark v. Haney, 62 Texas, 511, 514; Brotherton v. Weatherby, 73 Texas, 471, 473; Smith v. Eckford, 18 S. W., 210, 212; Johnson v. Elmen, 94 Texas, 168, 173; Barbee v. Spivey, 32 S. W., 345-347; Diffie v. Thompson, 90 S. W., 193, 196; Whitfield v. Diffie, 105 S. W., 324, 325; Villa v. Rodriguez, 12 Wall, 323, 339-341; Babcock v. Wyman, 19 How., 289, 294; Tower v. Fetz, 26 Neb., 706, 18 Am. St., 795, 799, 42 N. W., 884; Morrow v. Jones, 41 Neb., 867, 60 N. W., 369, 372; Meehan v. Forrester, 52 N. Y., 277, 279; Paine v. Wilcox, 16 Wis., 215.

As to the amount of evidence required:   Pierce v. Fort, 60 Texas, 464, 471; Ingenhuett v. Hunt, 39 S. W., 310; Whitfield v. Diffie, 105 S. W., 324, 325.

As to the character of proof required:   Howard v. Zimpleman, 14 S. W., 59, 61, 62; Baylor v. Hopf, 81 Texas, 637, 641; Wallace v. Berry, 83 Texas, 328, 330; Barnett v. Houston, 44 S. W., 689, 692; Mixon v. Farris, 48 S. W., 741, 742; Kartoghian v. Harboth, 56 S. W., 79, 80; Smith v. Easthan, 56 S. W., 218, 219.

The court did not err in refusing defendants' special charge No. 3, because the case had already been submitted on special issues, and such a charge could have been proper only in case of a submission on a general charge.   Rev. Stats., 1895, arts. 1328, 1331; Dwyer v. Kalteyer, 68 Texas, 554, 564; Blum v. Rogers, 71 Texas, 668, 676; Moore v. Pierson, 93 S. W., 1007, 1008, 100 Texas, 113.

The court erred in overruling the motion of appellees to reform the judgment by computing the interest on the indebtedness of the appellee, D. R. Fant, to D. Sullivan & Co. at the rate of six percent per annum, instead of at the rate of ten percent per annum, from and after maturity, because it is established by the pleadings and the special verdict, and the judgment, that D. Sullivan & Co. fraudulently prevented the appellee, D. R. Fant, from discharging or attempting to discharge said indebtedness at maturity.   Clark v. Haney, 62 Texas, 511, 514, 515; Paine v. Wilcox, 16 Wis., 217; Chicago T. & M. C. Ry. Co. v. Titterington, 84 Texas, 218, 224; Detroit Elec. Works v. Riverside St. Ry. Co., 29 S. W., 412, 414; Sands v. Codwise, 4 Johns (N. Y.), 536, 599; Smith v. Eckford, 18 S. W., 210, 212; Davis v. Swedish-American Bank (Minn.), 79 Am. St., 400, 404; Pollard v. Lathrop (Colo.), 20 Pac., 251, 254; Stone v. Farnham (R. I.), 47 Atl., 211, 212.

JAMES, CHIEF JUSTICE.—This suit is by Lucie A. Fant, joined by her husband, D. R. Fant, against D. Sullivan, D. G. Sullivan and the firm of D. Sullivan & Co., composed of D. Sullivan and W. C. Sullivan, and against a corporation known as the Santa Rosa Ranch Company.

The petition alleged, substantially, that on or about January 6, 1904, D. R. Fant was indebted to D. Sullivan & Co. in the sum of $437,800.52 secured by deed of trust on lands in various counties aggregating about 301,203 acres, and chattel mortgages on cattle and horses; that on or about January 5, 1904, some of said indebtedness being due and the rest approaching due, plaintiffs were endeavoring to make a sale with respect to said property, especially of the Santa Rosa Ranch, and for that purpose had appointed their son, D. R. Fant, Jr., and James F. Scott, their attorneys in fact, who had gone to the King and Kenedy Ranch for that purpose, when Dr. Amos Graves, Sr., as the agent of D. Sullivan and D. Sullivan & Co., went to plaintiffs and stated that D. Sullivan and D. Sullivan & Co. had sent him for the purpose of stopping the sale of the Santa Rosa Ranch at $2.50, at which price the said D. R. Fant, Jr., and said Scott had been authorized to sell it, and assured plaintiffs that if they would forego the sale of the property, they, D. Sullivan and D. Sullivan & Co., would sell the property covered by their deeds of trust and buy it in so that they could handle it, and would then sell same to the best advantage, and would not sell any of the Santa Rosa Ranch at less than $3.00 per acre, and after paying the indebtedness due D. Sullivan & Co. together with the reasonable expenses of handling the property and a fee of ten percent to J. C. Sullivan as attorney's fees, they would return all of the excess of said property to Mrs. Lucie A. Fant for her sole use and benefit, specially agreeing and declaring that the same was not to be turned over to D. R. Fant; and would carry the indebtedness until a sufficient quantity of the property could be sold with which to pay off said indebtedness, etc.; and urging said Fant and wife to recall their said attorneys in fact and direct them to not make sale; and agreeing that if they would permit D. Sullivan and D. Sullivan & Co. to sell and handle the property as aforesaid, and charge the ten percent, etc., they, D. Sullivan and D. Sullivan & Co., would pay plaintiffs monthly the sum of $335 to live on.

That plaintiffs accepted said proposition and recalled their attorneys in fact. That D. Sullivan and D. Sullivan & Co. confirmed and approved said contract, and performed the same in part, and commenced in February, 1904, and continued up to June 8, 1905, to pay said sum of $335 monthly, and also further and additional sums as requested by plaintiffs, all under said agreement and with the understanding that they would be charged to plaintiffs in the final settlement. That in pursuance of said agreement D. Sullivan and D. Sullivan & Co. proceeded to sell the property under the deeds of trust and chattel mortgages and bought it in for a nominal sum compared to its value, on the first Tuesdays in April and May, 1904.

That in furtherance of said agreement D. R. Fant prevented persons from attending the sales and but for the agreement and understanding there would have been purchasers at the sales and they would have sold a sufficient amount of the property at private sale to have paid the in-

debtedness, but refrained and desisted from doing so, relying on said agreement.

That after said trustees' sales, D. Sullivan and D. Sullivan & Co., through their agent and representative, Dr. Amos Graves, Sr., sought and obtained a ratification and confirmation by plaintiffs of the sales, for the purpose of curing irregularities in such sales as made, and to remove questions that might arise in the minds of purchasers as to the title of D. Sullivan and D. Sullivan & Co., and to put the title in such shape that it would be acceptable to persons purchasing, and representing that unless this was done they could not and would not carry out their agreement, and relying thereon plaintiffs executed such deed, which was prepared by John C. Sullivan, son of D. Sullivan and brother of W. C. Sullivan, who was acting as their attorney.

That the said D. Sullivan and D. Sullivan & Co. never repudiated the agreement made through Dr. Graves, but recognized and in fact carried out the same by making said monthly payments up to about April 1, 1906, at which time they ceased to make the monthly payments and claimed and asserted that they had no agreement with the Fants, and that Dr. Graves had never been authorized to act for them.

Then follow allegations, in substance, that on February 24, 1906, D. Sullivan sold to the Santa Rosa Ranch Company 86,944.63 acres of Santa Rosa Ranch (the ranch containing about 190,000 acres) for $10 and other considerations, the land being then of the value of $5 an acre, that there was no real consideration for this sale, but that it was had as a pretext and in fraud of plaintiffs, but if it should be sustained as a sale, plaintiffs would be entitled to a credit on the indebtedness in said sum of $434,722.65.

That in February, 1906, the Santa Rosa Ranch Company conveyed to Ed. Lassater 60,709.23 acres of said land so deeded to it, at the price of $173,791.07, leaving 26,235.5 acres still in the Santa Rosa Ranch Company; that as said Lassater was an innocent purchaser said sale can not be asked to be set aside, said sum should go as a credit on plaintiffs' indebtedness to the Sullivans, but as to the said surplus of land in the Santa Rosa Ranch Company of 26,235.3 acres, the sale should be annulled and the title thereto vested in plaintiff Lucie A. Fant, or the Sullivans be required to pay her the value thereof, $5 per acre, to be credited upon the indebtedness of D. R. Fant to them as of date February 24, 1906.

That on August 11, 1905, D. Sullivan & Co. sold to the Live Oak Company the ranch known as Weedy Ranch of 47,735 acres for $106,-942.40, and on August 22, 1906, D. Sullivan sold to his son, D. J. Sullivan, 49,923.29 acres, part of the Santa Rosa Ranch, for a consideration of $148,185.85; and that D. Sullivan and D. Sullivan & Co. sold 20,000 acres in Starr County at $2.00 an acre, its reasonable value being $40,000; and sold the cattle and horses, their reasonable value being $90,000. That D. Sullivan and D. Sullivan & Co. sold to D. S. Combs or other persons the lands in Brewster and Pecos Counties for $74,872 net.

That said amounts from said five sales, aggregating $633,791.95,

overpays the indebtedness of D. R. Fant to D. Sullivan & Co. with interest, expenses, and the ten percent attorney's fees.

That by deed dated August 22, 1906, D. Sullivan conveyed to his son D. J. Sullivan, 33,826 acres of the Santa Rosa Ranch for a recited consideration of $101,478; that the latter had full knowledge of said agreement made through Dr. Graves and also knew that the indebtedness of Fant to D. Sullivan & Co. had been discharged, and in this connection plaintiffs ask that the said deed be vacated and the title to the land vested in plaintiff, or in the alternative, if the deed be maintained, then that D. Sullivan and D. Sullivan & Co. be charged with the recited consideration, the land being reasonably of the value of $5 per acre.

That D. Sullivan and D. Sullivan & Co. have leased and have received rents and revenues from the lands, plaintiffs not being able to state to what extent, but the rental value of same is twenty cents per acre per annum and pray that upon the trial they be allowed credit therefor.

That while in possession of the Santa Rosa Ranch they used about 100,000 acres thereof for their own use and benefit, grazing their individual cattle thereon from and after about May 1, 1904, and are still using the same, the reasonable value of which is 20 cents per acre per annum aggregating $20,000 per annum, and plaintiffs pray that Lucie A. Fant have judgment for the value of such use.

That aside from the sale of the 33,826 acres conveyed to D. J. Sullivan by deed of August 22, 1906, and the 26,235.3 acres still in the name of the Santa Rosa Ranch Co. (which have been asked to be set aside) the lands sold aggregating 219,387.52 acres, including the land in Starr County, 20,000 acres, and the 60 acres sold to Lassater, leaving still in the hands of D. Sullivan and D. Sullivan & Co., as per description and acreage recited in the deed of confirmation, a copy of which is on exhibit, 129,841.48 acres, but the actual acreage, according to the surveys as set forth and specified being about 81,815.48 acres, of which about 79,307.48 acres constitute the remaining part of the Santa Rosa Ranch in Hidalgo and Cameron Counties, reasonably worth $5 an acre, aggregating $396,537.40 (the apparent title to 26,335.3 acres thereof being in the Santa Rosa Ranch Co. and the apparent title to 33,826 acres thereof being in D. J. Sullivan as hereinbefore set forth); 1280 acres being in Zapata County of the reasonable value of $2.50 per acre, aggregating $3,200, and 1228 acres in Webb County of the reasonable value of $3.00 per acre, aggregating $3,684, making the total value of the land still held by D. Sullivan and D. Sullivan & Co., and to which Lucie A. Fant is entitled, the sum of $403,421.40.

Plaintiffs' prayer was for cancellation of the trustees' sales and the deed of confirmation, as to all the remaining property with the apparent title in D. Sullivan and D. Sullivan & Co., and not sold by them in good faith, and also cancellation of the deed to the Santa Rosa Ranch Co. as to the said unsold 26,235.3 acres thereof not sold to Lassater, as well as the lease contract of the Santa Rosa Ranch Co. to Lassater, and also cancellation of the deed to D. J. Sullivan for the 33,826 acres, and that the apparent title in said lands be divested from them and vested in Lucie A. Fant; but if they, or any of them, be sustained, then that D. Sullivan and D. Sullivan & Co. be charged with the value thereof, to wit: $5.00 an acre, and in addition that she have judgment against

them for whatever amount may be shown to have been paid to and received by them in excess of the indebtedness of D. R. Fant with interest thereon, and expenses of handling the property, including the ten per cent attorney's fee, together with interest on such excess, and that any claim of D. Sullivan and D. Sullivan & Co. in what is known as the Nopal Mine be cancelled, and for all costs.

Attached to the petition are exhibits, made parts thereof by reference so that the properties referred to in the above outline of the petition are identified.

The petition may be summarized as alleging an oral agreement between Fant and wife, and the Sullivans, whereby and in pursuance of which it is claimed the Sullivans obtained title in themselves to the property under the powers in their deeds of trust, and under a deed confirmatory of such sales, by which agreement and sales thereunder the latter acquired the property impressed with a trust, which required them, in equity, to hold and turn over to Mrs. Fant as her separate property any excess arising from said property after their debt, as acknowledged in the petition, had been satisfied out of sales by them of the property. The purpose of the petition, stated generally, was to recover this remaining property or its value, as the separate property of Mrs. Fant, who, joined by her husband as the law requires, was the plaintiff.

Defendants D. Sullivan and W. C. Sullivan and the firm of D. Sullivan & Co. interposed a plea of misjoinder, claiming that the property was community property of D. R. Fant and his wife, and that Mrs. Fant was not a proper party. Also general and special demurrers and general denial. The answer proceeds at length to state special matters involved in the defense. It denied the agency of Dr. Graves, and any knowledge of the agreement which plaintiffs alleged, or any ratification of it. They then alleged what indebtedness D. Sullivan & Co. held against D. R. Fant and their deeds of trust, etc., and what the sales made under same brought; that the sums due them on April 5, 1904, with attorney's fees, amounted to $441,098.33, and after deducting the proceeds of such sales, the balance due them was, on April 5, 1904, $265,-825.83, with interest thereafter at ten percent per annum. Furthermore, that on April 19, 1904, D. Sullivan & Co. brought suit against D. R. Fant on one of the notes for $16,000, less the credit thereon, in the District Court of Bexar County, and recovered judgment against him by default; and on October 13, 1904, they sued him also on the other notes for the sum of $260,000, less credit arising from the sales, and recovered judgment also by default and that said judgment remains in full force. That both of said suits were instituted long after the making of the alleged agreement, and such agreement would have constituted a defense in said causes, and could have been pleaded as a defense and in bar of plaintiffs' right to recover in said suits, and therefore the determination and judgments in said causes necessarily involved such defense, and necessarily involved the determination of the question as to whether or not D. Sullivan & Co. had agreed, through Dr. Graves, to sell the property and after payment of the debts were to return the balance of proceeds and property to plaintiffs, wherefore said judgments are *res adjudicata* as to the vital issue in this suit.

Defendants also pleaded that the Graves contract, if made, related to land and conveyances of land and was void under our statute of frauds.

Also pleaded that at the time of said alleged contract, the property it purported to affect was community property of Fant and wife, and at that time Fant was absolutely insolvent and owed debts largely in excess of the value of the interest he may have had in the property in excess of what he owed defendants, and the purpose of Fant and wife in making said arrangement was to have the title to the property when reconveyed by the Sullivans placed in such manner as to hinder, delay and defraud the then existing creditors of D. R. Fant other than the Sullivans and that said contract was therefore void.    Also that the agreement was wanting in consideration.

Defendants, in the event the agreement should be found to have been made by Dr. Graves, and that it was binding on defendants for any reason, pleaded the sales made by defendants at length and what had been received and paid out, and what was still due them, and prayed for judgment for such sum as might be found to be due them.

Defendants disclaimed as to the Nopal Mine.    The Santa Rosa Ranch Co. disclaimed as to any property involved.    D. J. Sullivan answered, adopting part of the defendant's answer, and pleaded that he was purchaser of the property conveyed to him and asked that his title be quieted. Some supplemental pleadings were filed on both sides, which it does not appear necessary to set forth.

The cause was submitted to the jury upon 19 special issues, and decree was entered on their findings for the sum of $65,841.01 in favor of plaintiff, Lucie A. Fant, and also in her favor for certain lands, and likewise in her favor cancelling the deed from D. Sullivan to D. J. Sullivan, of August 22, 1906, for 33,826 acres of the Santa Rosa Ranch.

The first, second and third assignments of error complain of the refusal of an instruction to find for the defendants, because the judgments taken against D. R. Fant, referred to above, were *res adjudicata* of the issues and matters involved in this suit.    This assignment we overrule for the reason that Mrs. Fant, the plaintiff here, was in no sense a party to said judgments.    This is intended to dispose of all other assignments which may refer to the question.

The forty-sixth assignment complains of the overruling of defendant's plea of misjoinder of parties.    The proposition is that the subject matter of the suit being the community property of D. R. Fant and wife, the latter was an improper party and improperly joined.    This plea was addressed to and founded upon the case as stated in the petition, and upon those allegations the plea was properly overruled.    The petition stated a case, which, if substantiated by evidence, constituted a gift by Fant to his wife of community property, which made it her separate property.

The fifty-second assignment involves consideration of the following proposition:

"If the contract of January 7, 1904, was ever made, the consideration moving from the Fants in such contract was a community consideration, and whatever benefits accrued in said contract belonged to the community estate of Fant and wife; if Fant and the parties attempted to

vest the fruits of that contract in Mrs. Fant as her separate property, and if, in law, it could have that effect, then such contract was fraudulent and void in law for the reason that at the time of the making of the contract Fant was insolvent, and the necessary effect of that contract, so far as it attempted to vest the rights under it in Mrs. Fant as her separate property, was to hinder, delay and defraud the creditors of D. R. Fant. In such case the law presumed it fraudulent and the evidence raised that intent, and the court erred in failing upon request of defendants' counsel to submit that issue to the jury, particularly in view of the fact that Fant was not only insolvent, but after the making of said contract no assets of any character remained in his hands sufficient to satisfy his debts in whole or in part."

We deem it advisable to deal with this contention *in limine.* It is manifestly unsound. If, by the arrangement set up in the petition, the remainder of the property, after satisfying the indebtedness of Fant to Sullivan, was Mrs. Fant's by gift, as the proposition presupposes, then although the transaction may have, by reason of Fant's inability, following this gift, to discharge his debts to other creditors, been void, it would only be so as to such other creditors, and upon their complaint. The rule on the subject is plainly announced in Miller v. Koertge, 70 Texas, 163: "The language of the statute in reference to fraudulent conveyances is that such 'shall be, as to such creditors, void.' But it is universally held that by this is not meant that the conveyance is absolutely void, that is to say, null to all intents and purposes as to the persons attempted to be defrauded, but it is subject to be avoided by a creditor, proceeding according to the due course of law. For example, he can not act upon the theory that as to him the conveyance is absolutely void and take a deed from his debtor." Another principle approved in the same case is that "should a surplus remain after paying the debts, it would belong to the grantee, for the grantee's title fails only as far as it stands in the way of creditors." We think all this applies with peculiar force to that class of conveyances that are gifts of property. Therefore a direct gift of property does not set itself aside, simply because creditors of the donor exist who are thereby left without other means out of which to satisfy their claims. They can have it set aside to the extent that they are affected by it, but beyond that the gift is valid. In other words, the donee takes the property subject to the demands of such creditors. The attack which the requested charge sought to make on the transfer did not come from any such creditor. In this connection it may be well to state the requested charge upon which the above proposition is founded. It reads:

"In this cause now come the defendants and request the court to instruct the jury as follows: That if there was any agreement entered into between Amos Graves, Sr., and the plaintiffs in this case, as alleged in said petition, and if Amos Graves, Sr., was the agent of defendants, D. Sullivan or D. Sullivan & Co., subsequent to the making thereof, if you find that Amos Graves, Sr., made such agreement, ratified the same, then, if said agreement was made by the said D. R. Fant and Lucie A. Fant for the purpose and with the intention of hindering, delaying or defrauding the creditors of the said D. R. Fant,

it can not be enforced, and if you so find, you are instructed to find a verdict in favor of the defendants."

We think it will be readily seen that this instruction would have branded the transaction as an illegal one upon its face, instead of dealing with it as above explained. It was incorrect and properly refused.

We may here also advert to the fact that this effort of Fant to make a gift to his wife was not by a direct conveyance, but was through the instrumentality of defendants, the title to the property to be first vested in the latter and by them, after performing the trust, to be turned over or deeded to the donee. It may be that defendants in so acting as trustees in thus being parties to the gift would render themselves liable to the donor's other creditors, in certain circumstances, if such creditors were caused to lose their recourse on the property through their acts, yet it seems clear to us that no such consideration could avail defendants in the circumstances of this case. Defendants were not interposing this defense either to protect themselves against such other creditors, or in the interest of such other creditors, nor could the annulment of the gift, in any event, avail such other creditors. The Messrs. Sullivan had title to all the property under the terms of their deeds of trust and chattel mortgages, and claimed it as theirs. This being so and the gift being declared void and of no effect, how, in that situation, the other creditors would be benefited we are at a loss to see. The only protection they would have in the way of recourse on the property would seem to lie in the sustaining of the gift, for then the property is subject to their claim. The setting of it aside would leave it the property of the defendants. We do not believe that an agent or trustee through whom a gift of property is being effectuated, can, after the title has been vested in him for that purpose, have the gift declared void where the purpose and only effect would be to enable him to keep the property for himself.

At this place we may consider another question upon which we doubt there being any assignment of error in the briefs, but which is discussed at length in one of the briefs of counsel for appellants, which question is the statute of frauds as concerning the parol arrangement upon which plaintiffs seek to establish the alleged gift, the same affecting lands. Express trusts in land are not within our statute of frauds and can exist and be proved by parol. Holland v. Farthing, 2 Texas Civ. App., 155, and cases cited; Chilson v. Reeves, 29 Texas, 276.

The fourth assignment is that the court erred in overruling the motion for new trial in that the testimony, and in any event the overwhelming weight and preponderance of the testimony, shows that Dr. Graves was not acting as the agent of defendants, nor that any of them ever authorized him to make the agreement as found by the jury.

The fifth is that the testimony, or in any event the overwhelming weight and preponderance thereof, establishes that Dr. Graves did not make the contract, and if he did do so, there was no competent evidence showing that in making same he was the agent of D. Sullivan and D. Sullivan & Co., or that he was ever authorized by them to do so; and the undisputed evidence is that in all his acts, declarations and statements he was the agent of plaintiffs and was acting for and in behalf of them. These propositions are the bases also of the sixth and

seventh assignments. The eighth asserts the kindred proposition that there was no proof that D. Sullivan, W. C. Sullivan or D. Sullivan & Co. ever ratified the said agreement, or that they or either of them were ever informed of or knew that Dr. Graves on or about January 7, 1904, had made said agreement in their behalf, if he did make the agreement, and the evidence fails to show that they, or either of them, ever made any declarations or did any act or thing under said agreement which in any manner tended to show a knowledge of said agreement or a ratification of the same, but upon the contrary the undisputed evidence shows that neither they, nor either of them, were ever advised or informed that plaintiffs claimed that there was such agreement, or that there was such agreement, until by the institution of this suit.

The testimony of Dr. Graves, in substance, was that he was not sent or authorized by the Sullivans to make the arrangement or agreement; and that he never made or undertook to make any such agreement. His testimony went to show that he never acted for the Sullivans on the occasion of his visits to the Fants and that what he did was solely in the latter's behalf and consisted in urging Mr. Sullivan, in their interest, to do something for them in the way of letting them have money to live on and to allow them something as a gratuity out of the property.

Of course, if Dr. Graves' testimony had been that he made the contract at the instance of Mr. Sullivan, the assignment under consideration could not seriously be made; but the fact that his testimony was as above, which was in harmony with what was testified to by defendants, and the absence of any writings, and the absence of any meetings between the Fants and the defendants, showing directly that the latter made or participated in the making of any contract, or knew what transpired between the Fants and Dr. Graves in reference to a contract, all necessitated proof of any contract which was binding on the Sullivans by means of circumstantial evidence, the difficulties surrounding which are well known.

The only question which addresses itself to us upon these assignments is whether there were circumstances sufficient to have authorized the jury to reach the conclusions they did, and if there were, then our power to revise their judgment in such a matter does not exist.

The circumstances admitted in evidence and upon which plaintiffs rely were in part as hereafter stated.

The testimony of Fant and Mrs. Fant and others of the family was, in substance, that Dr. Graves came to their house and announced that Mr. Sullivan had sent him to have him (Fant) call off the sale of the Santa Rosa Ranch at $2.50 an acre; that if he would stop the sale of it Mr. Sullivan would sell it out under a deed of trust and buy it in and sell it out for $3.50 or $4.00 an acre, and if he did not, would take it himself at $3.00 an acre. Then Fant spoke up about the Coyote Ranch, saying that he owed $37,000 on that and Dr. Graves said Mr. Sullivan would take up and carry it also and buy it and sell it out at $3.50 or $4.00 an acre, and the equity on all the property, lands and cattle, he would give back to Mrs. Fant. That Fant then said: "I haven't anything on earth to live on, what will my family do?" Dr. Graves then said he would go and see Mr. Sullivan about this. When he came back an hour or two afterward he told us that Mr. Sullivan would allow us

$335 a month to live on. Thereupon Fant had his son and Mr. Scott, who had been sent off empowered to make a sale of the Santa Rosa Ranch for $2.50 an acre, recalled by telephone. Dr. Graves said also that John C. Sullivan would have to have an attorney's fee of ten per cent. or $40,000 which Fant said was all right. Fant testified that there was present at that interview his wife and his daughter, Irma Fant.

Mrs. Fant testified similarly: "He said that Mr. Sullivan sent him to see if we would stop the sale of the Santa Rosa Ranch at $2.50 an acre, and said if we would, and then let Mr. Sullivan sell out all the property under a deed of trust and buy it in, that after he sold it he would pay himself out of the proceeds of the Santa Rosa land and give his son, John, his ten per cent. attorney's fees and hand back the equity in the Santa Rosa Ranch and give all the property back after he had paid himself and Mr. John Sullivan his attorney's fees, that he would give me—he said he wouldn't give anything to Mr. Fant, that he was going to do this for me, that he would pay the loan on the Coyote Ranch and would carry this as he had the other property." That the question came up about what Mr. Fant was to live on, and after Dr. Graves had gone off to see Mr. Sullivan about this he returned and said that "Mr. Sullivan agrees to let your family have $335 per month for family expenses until the land is sold or there is a settlement," and Mr. Fant said, "Yes, I want to pay him every cent I owe him, I want to pay everyone else all that I owe them," and then the attorneys in fact were phoned to return. Miss Irma Fant's testimony was in effect the same.

There is no question that the proof was sufficient to establish that the agreement was made, and was acted upon and relied upon by Fant, and that a sufficient consideration was shown to support it, and it would be binding on defendants if Mr. Sullivan or D. Sullivan & Co. authorized Dr. Graves to go and make such an agreement, or went on and acquired the property with knowledge that such an agreement had been made under the circumstances above stated and was being relied on by the Fants.

Among the circumstances shown as throwing light upon such authorization or knowledge, are:

1st. It appears from evidence that beginning with the following month the $335 monthly allowance was paid by the Sullivans, Dr. Graves being the person through whom it was delivered to Mrs. Fant. This is no insignificant factor in the case. The evidence in connection with this was sufficient to warrant the jury in concluding that this was done in pursuance of the agreement that had been made by Dr. Graves. They were authorized to conclude that this much of the agreement was known to Mr. Sullivan, and it is not likely that he would be found carrying out a part of it, in ignorance of everything else connected with it. Their relations to Mr. Fant prior to the time of the alleged agreement were not such as suggest the view that this monthly allowance sprung from philanthropy. It is more reasonably accounted for upon the theory of some understanding of which the advances formed a part, and if this was so, then ignorance of what the understanding was under which it was paid could hardly be ascribed to defendants.

It is true that the first note for $335 signed by Mrs. Fant, that was produced at the trial, was dated June 3, 1904, which was after the sales

of the property under the deeds of trust. If this really was the first allowance made, the circumstance under consideration would have amounted to little or nothing, and would have been corroboration of the testimony of Dr. Graves that the agreement for the allowance was made in April or May, 1904, on his importunity, after the foreclosure, and was therefore not a part of the agreement of January, 1904. But it also was made to appear that on June 30, 1904, a note for $1704.49 was given to take up a number of prior notes that had been given for advances, and which had been destroyed. The Fants testified that these prior notes were given for monthly advancements of $335 each, the first two of which were made at one time, evidenced by a single note of $670 made one or two months after the agreement in January. The difference in the amount of the $1704.49 with the sum of the previous monthly allowances, was accounted for as representing interest and some taxes. It also appeared that the $1704.49 note and subsequent notes given monthly for the $335 allowance were signed by Mrs. Fant alone, without security, thus indicating that the notes were taken more as memoranda in connection with some understanding than as original contractual obligations.

2d. On January 27, 1904, defendants loaned Fant $3850 without additional security. Considering their relations to Fant prior to January, 1904, the fact had some significance, as it indicated a change of attitude, which could hardly be accounted for except on the theory of some agreement or understanding. There was also a statement of D. Sullivan to A. J. Bell in January, 1904, to the effect that he did not intend to close out Col. Fant; also a statement of W. C. Sullivan who, after the trustees' sale of the Santa Rosa Ranch, went to the residence of Fant and informed him that everything had come out all right and that there were no bidders, and asked for the title papers to the ranch; also the statement of W. C. Sullivan to John Lewis in the fall of 1904 that Fant would get $3.00 an acre for the Santa Rosa Ranch but not until he was able to make title.

3d. The agreement as testified to by plaintiffs provided that D. Sullivan & Co. was to take up and carry the debt on the Coyote Ranch. The title to this ranch seems to have been found in some confusion, and on June 24, 1904, J. C. Sullivan testified that he had examined the title to the ranch for D. Sullivan & Co. In the expense account attached to defendants' answer is the item of June 15, 1904, "Ogden & Brooks examining Coyote abstract, $250." That opinion was unfavorable. On June 24, John C. Sullivan wrote Mrs. Fant a letter in which he stated: "Kindly advise me as soon as you can whether or not you desire D. Sullivan & Co. to take up the Russell & Ward loan." This referred to the loan on the Coyote Ranch. This indicated that D. Sullivan & Co. had knowledge of another provision of the agreement as testified to by plaintiffs.

4th. It appears that John Shy, about July 1, 1904, had a conversation with Mr. D. Sullivan and told him that they said that they (Fants) didn't think Mr. Sullivan should be particular about a thing of that kind (sale of cattle), that he had plenty of security and was giving all the money to Mrs. Fant after he got his debt paid, and Mr. Sullivan's

reply was that he didn't want anything except just what his mortgage called for. This was after the trustees' sales.

5th. About February or March, 1905, Mrs. Fant and her daughter went to see Mr. D. Sullivan about having a settlement. It appears that what led to this was that Mrs. Fant had previously sent for Dr. Graves about a settlement and the latter returned with two propositions from Mr. Sullivan. On this visit Mr. Sullivan submitted the same propositions. Mrs. Fant asked if that was the best he could do, to which he replied that none of the lands had been sold and if she insisted on an immediate settlement, that was the best he could do, but if she would wait she would get more. Asked if she told Mr. Sullivan what Dr. Graves had agreed to as his representative, she testified: "I told him that Dr. Graves had said that all he wanted was what Mr. Fant owed him, and when I said that, Mr. Sullivan said: 'Yes, yes, Mrs. Fant, all I want is my money.'" The daughter testified likewise.

6th. Mrs. Fant testified that in April, 1905, she went to defendant's bank to see about the delayed monthly allowance, which was paid to her; that before leaving she asked Mr. Sullivan if he had done anything, if he had a buyer for the Weedy land. Mr. Sullivan spoke of someone who was thinking about it, and said to Mrs. Fant: "How much must I ask, Mrs. Fant, or how little must I take for the Weedy land?" and she answered to take all he could get, but don't sell for less than $2.50 an acre.

7th. A note for $744.40, dated June 30, 1904, signed by Mrs. Fant, the body of which was written by Mr. Sullivan, recited that the money was advanced for payment of taxes on "some of my property in which D. Sullivan & Co. have no interest." This implied that there was some property of hers in which D. Sullivan & Co. had an interest, and no other such property is indicated by this record, except that in question.

The above does not constitute all the evidence which tends to show that the agreement had been entered into, through Dr. Graves, by the Sullivans, or that they had sold the property under the deeds of trust and bought it in with knowledge of and in subordination to said agreement as made on their behalf. This opinion would be too extended if we discussed this feature of the case at greater length, but enough of the evidence has been outlined to shown that the circumstances were not only sufficient, but abundant to point the jury to the conclusions just stated. We have stated only testimony about the admissibility of which no question could properly be raised. What has just been stated requires us to overrule the assignments nine to twelve inclusive.

The thirteenth and fifteenth assignments of error complain of permitting W. W. Jones to testify to statements made to him by Dr. Graves in the latter's office while the property was being advertised for sale under the deeds of trust. The fourteenth complains of the same witness testifying to substantially the same statements of Dr. Graves made to him in a conversation at the Elite Hotel after the conversation that occurred in the office; and the sixteenth assignment complains of a like conversation testified to by Jones as occurring at the Elite Hotel, after the first conversation in said hotel. The same proposition is advanced under the above assignment and is as follows:

"To render the declarations of an agent admissible against the prin-

cipal such declarations must have been made concerning an act within the scope of the authority of the agent and at the time that the act was being performed by the agent. If the declarations be made before or after the act was done, it is not a part of the *res gestae;* therefore, not admissible. Statements, representations or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance or so soon as to be in reality a part of the transaction. Declarations, statements or admissions of an agent made before the performance of an act was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, are not admissible. The declarations or statements of the witness, Dr. Graves, to the witness W. W. Jones, were not made under the above facts or circumstances so as to make them admissible. The court, therefore, erred in permitting said statements and declarations of Dr. Graves to go in evidence."

The first of said conversations occurred while the property was being advertised for sale; the second one, according to Jones' testimony, occurred about a month after this; and the third Jones testified occurred also about a month after the first conversation had in Dr. Graves' office. These conversations were all located prior to the obtaining from the Fants of the confirmatory deed, made in October, 1904, which confirmed the sales that had been made under the deeds of trust, and we may here remark that one of the findings of the jury was that the agency of Dr. Graves on behalf of D. Sullivan and D. Sullivan & Co. continued up to the time of the making of said confirmatory deed, although this latter statement of ours we lay no stress on in disposing of these particular assignments.

The conversation that occurred in Dr. Graves' office was thus narrated by Jones. "I asked him if Mr. Fant was going to make no move to save all of this property, if he was going to let all this property go for a mere song and if Sullivan was going to take all the property away from him. He told me he wasn't, told me Mr. Sullivan was going to sell the property, that he couldn't get Mr. Fant to settle with him, and he regarded Mr. Fant as being incapable of attending to business any longer, that he was on a decline mentally, that he was going to sell the property, pay himself, pay the expenses of the sale, and that he was going to turn the balance of that money over to Mrs. Fant, and that Mr. Sullivan had told him to tell Mrs. Fant that he would guarantee $3.00 an acre for the Santa Rosa Ranch, and when he sold all the property and got in all the money, after having taken out his money—what he owed him—the interest and ten percent, then he was to turn the balance of the money over to her, and he went on and said people talked about Mr. Sullivan as being a mean man, a robber, a man who wouldn't do right, but that he had done business with him for years and he had never done business with a straighter man, a squarer man, or a more upright man than Mr. Sullivan. And he said that Mr. Sullivan was going to show the world that he was an honorable man, that he was going to treat her right, that he wasn't going to rob her or the children out of a dollar, that he was going to take his money—what belonged to him—take out the expenses of the sale and turn the balance of the proceeds and the entire estate over to her; and he said he was then

furnishing her so much money per month and that he had gone down to see Mr. Fant and got Jim Scott to stop a sale of the land."

Counsel for defendants, having previously interposed objection to this testimony, now moved to strike out the entire statement, that the said statements or declarations of Dr. Graves were not made by him at the time or during the making of the alleged contract in January, but were made some months afterwards, and they were inadmissible because they did not accompany the transaction set up as constituting the agreement.

Some of the statement, as narrated by Jones, was asked by counsel for plaintiff to be stricken out and the jury instructed not to consider it. The part to which this applied was: "And he went on and said people talked about Mr. Sullivan as being a mean man, a robber, a man who wouldn't do right, but that he had done business with him for years and had never done business with a straighter man, a squarer man, or a more upright man than Mr. Sullivan." In response to this the court had that portion read to the jury by the stenographer and directed the jury not to consider it. In doing this colloquies arose and the reading of that portion was repeated twice and the jury emphatically told to dismiss it from their minds and not to consider it. This proceeding is assigned as error by the eighteenth assignment, the error asserted being that by the repeated readings of it the effect was to impress it upon the jury, thereby causing them to consider it instead of discarding it. We think the statement was not clearly detrimental to defendants, and it may be said to have been favorable. But it is evident that if there was any of the statement that was admissible (and we think there was) defendants' objection to the statement as a whole did not apply to any particular portion thereof, and but for the request of plaintiffs' counsel to eliminate the portion referred to, the whole would have gone to the jury without error, and been subject to be considered by the jury and discussed by counsel. The objection, under the circumstances, can not be that the portion was admitted, but is that having been admitted the court impressed that portion firmly upon the attention of the jury. We can not understand how it is possible for a court, in any case, to direct the jury not to consider certain evidence without clearly and unmistakably pointing out to them such evidence. We, therefore, at this place, overrule said eighteenth assignment of error.

But to get back to assignments, thirteen, fourteen and fifteen. Appellees justify the admission of W. W. Jones' testimony upon several theories:

1st. That it was admissible for the purpose of discrediting the testimony of Dr. Graves.

2d. That appellants introduced substantially similar statements under similar conditions, of Dr. Graves made to Geo. W. West and thereby waived the error, if any.

3d. That it appears that appellants in the cross-examination of Jones brought out the same evidence.

4th. That it appears that there was a common design existing between Dr. Graves and D. Sullivan, which had for its purpose the obtaining of plaintiffs' property by fraud, and therefore the acts and declarations of Dr. Graves were competent testimony.

5th. That the statements were made by Dr. Graves in the performance of his agency and were therefore a part of the *res gestae.*

If any one of these positions be sound, we need not give our opinion as to the others. We think the evidence was proper for the first of the above reasons, and there was no request for an instruction restricting the effect of the testimony. It is true that at the time Jones was allowed to give said testimony, defendants had not been called on to introduce any testimony and Dr. Graves who was afterwards called as their witness had not testified. When he did testify, however, he denied the making by him of the agreement as alleged and testified to by plaintiff, and, to state it briefly, his testimony in material matters on this subject could not be true and some of his statements as testified to by Jones also true. He was defendants' witness and there were contained in the testimony of Jones statements concerning material matters which defendants were entitled to use to discredit him, hence there was no error in admitting it.

The fact that this impeaching testimony was admitted before Dr. Graves testified, is immaterial here. That he would be a witness for defendant in the main issue must have been apparent in view of the answer of defendants, and this proved to be so. The introduction of Jones' testimony was untimely, but that affected the order of proof merely. From the standpoint we occupy we are to look to the whole record, and pass upon the question in the light of the record as it is, and as the state of the evidence when the case was submitted, and as things then were no error existed in the presence of this testimony of Jones.

Similar testimony of statements made by Dr. Graves to Geo. W. West and to A. Drumm are complained of by the nineteenth and twentieth assignments for like reasons, but the disposition made of Jones' testimony disposes also of these. Likewise the testimony complained of in the twenty-first and twenty-second assignments.

In view, however, of a number of subsequent assignments which complain of testimony of statements by Dr. Graves, which did not involve contradictions, but were simply conversations or declarations by him concerning the relations of plaintiffs with defendants and admissible only on the theory of identity of Dr. Graves with defendants and on the theory that his agency at the time of the declarations was proved, we are obliged to consider the merits of the fourth of the above theories advanced by appellees, and we may as well do this here.

We recognize that agency can not be proved by the acts and declarations of the alleged agent alone. But appellants seem to concede in their brief that if there is *prima facie* proof of agency, then it is not error to admit the declarations and acts of the agent in order to prove what was done in the scope of his agency. It would be impossible (except in cases where the agency is admitted) to proceed any other way. Of course it would be proper and advisable to instruct the jury not to consider the declarations as evidence of agency, but to consider them only if the agency was found to be established by other proper evidence.

The question then is, was there any independent proof of the agency of Dr. Graves at the time he made the statements, declarations or conversations? Appellants say no, but we think there was. We have already held that there was with full explanation, under the fourth assign-

ment of error, so far at least as the original agreement of January 7th is concerned. But the evidence goes further than this if the jury believed the testimony given by the Fants, which of course they had a right to do.

The evidence of the Fants went so far as to warrant a finding not only that defendants had Dr. Graves obtain the agreement of January 7th, but that they had at that time and afterwards the design to not in good faith carry out that agreement, but to use it as a means of keeping Fant from taking steps to protect himself by selling property in the ordinary way to satisfy the deeds of trust, or by seeing to it that bidders were at the trustees' sales to make the property bring its value, in order that they might acquire title to all the property under these favorable circumstances, and then hold it as their own.

Surely, if the jury believed that Mr. Sullivan sent Dr. Graves to the Fant home, and that the agreement was made in January at his instance, or with knowledge of what Dr. Graves was doing, and further believed the testimony set forth above in connection with the fourth assignment, the jury may have had no difficulty in concluding that it was the purpose of defendants from and after the transaction in January until the confirmatory deed was obtained from Fant in October, to use that agreement as the basis of a scheme to secure the title to the property, which scheme would of course not be complete until after the trustees' sales, and it seems could not be complete (by reason of irregularities in the sales) until the confirmatory deed was executed.

This conclusion would be warranted in view of the attitude taken by the defendants, who denied that Graves made any such agreement in January (which was also of the testimony of Dr. Graves), and who deny any knowledge of any such agreement prior to the filing of this suit and who actually are claiming the property as their own.

Assuming that the jury believed the Fants, and believed that the contract was entered into and by authority of the defendants; and that the Fants relied upon it, and that from the attitude of defendants and Dr. Graves with reference to the matter now, defendants intended all along to obtain and use the contract as the foundation of a plan which was to result in their acquiring the property, and then deny the agreement and hold the property, the jury had the right to conclude from Dr. Graves' frequent and intimate connection with the transaction in the interest of defendants while the property was being acquired, that the design was a common one. Upon that theory the acts and declarations of one would be the acts and declarations of the other and upon it there can be no question that there was no error in admitting the acts and declarations of Dr. Graves for such connection would be agency of a pronounced character, and we, therefore, overrule the propositions advanced under the assignments twenty-two to twenty-nine, inclusive. Also assignments thirty-one to forty, inclusive.

The thirtieth is overruled. Mrs. Fant was allowed to testify that Dr. Graves was not her or D. R. Fant's agent. This was not error as the witness testified fully to the facts in connection with it.

The forty-first and forty-second assignments disclose no error. The testimony was not subject to the objection that it stated conclusions, and the testimony was admissible as showing the fact that Fant acted in

reliance upon the agreement in making no effort to have bidders at the sales, and also in executing the confirmatory deed.

Under the forty-third assignment it is insisted that the court should have permitted defendants to read a certain answer of the witness Green. This consisted of a statement which the witness said had been made to him by Dr. Graves in the latter part of 1904 or early part of 1905 to the effect that Graves had talked with D. Sullivan and had persuaded him to give Mrs. Fant something, and that Mr. Sullivan had agreed to give her 30,000 acres off the west end of the Weedy pasture, that Mrs. Fant had preferred the equivalent in cash at $2 an acre, and for that reason Mr. Sullivan would pay $2 an acre for the western portion of the Weedy pasture. And that Dr. Graves also stated, to the best of witness' recollection, that Mr. Sullivan had also promised to give Mrs. Fant 1,000 cows.

This was a declaration of Dr. Graves which would have tended to corroborate his testimony and unquestionably would have been admissible had it been shown to have been made prior to the confirmatory deed obtained by him from the Fants. But the witness seems to have placed it in point of time after that, and after the vesting of title to all the property in the Sullivans had been fully accomplished. Was it, under these circumstances, proper to corroborate Dr. Graves' testimony by means of this declaration? We think not. In Aetna Ins. Co. v. Eatman, 95 Texas, 37, the rule on the subject is thus stated: "Whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with testimony given by him at the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of trial, or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate the testimony, provided such declarations were made at a time when no such motive or influence existed."

Plaintiffs had used statements of Dr. Graves made by him during his agency, that is to say, prior to the confirmatory deed made in October, 1904, for the purpose of impeaching his testimony. The purpose of the agency, according to the case as made by plaintiffs, was completed by the procurement of the confirmatory deed. The motives in respect to statements by him made prior to this, and after this, would be different. Statements after this would naturally be in harmony with his testimony in the trial, while those made before would naturally be in support of the purposes of the agency and spring from a different motive. We think the court did not err in excluding the answer.

The forty-fourth assignment complains of testimony by D. S. Combs as follows: "I asked Col. Fant when the land was going to be sold. I told him I thought I would go out and bid on it. He said there was no use in your going out, Mr. Combs, you can't buy that land; we will run it up so high there is no use in going; you can't bid on it. So I just dropped it then and didn't go." This was objected to as hearsay. Plaintiffs pleaded that they relied and acted upon the trust agreement of January 7th. This was a material part of their case, and was capable of being proven by facts. The testimony was material and proper on the issue. Had Fant testified generally that plaintiffs relied and acted

upon the agreement, assignments would doubtless have been here complaining of such as being an opinion or conclusion of the witness, instead of facts, as was done by the forty-first and forty-second assignments of error.

We overrule the forty-fifth, which complains of certain language of plaintiffs' counsel in the argument. We cannot say that it probably operated to the prejudice of defendants, nor can we say that it was improper.

The forty-seventh, forty-eighth and forty-ninth assignments are overruled, for the evidence was sufficient to warrant the findings of the jury referred to in them, for reasons already stated in this opinion, particularly under the fourth assignment of error.

The fiftieth is overruled. The undisputed evidence was not as stated, that D. J. Sullivan purchased the land conveyed to him without notice of plaintiffs' claim. The jury could have found, from the evidence before them, that he acquired the deed with notice.

The fifty-first assignment relates to the confirmation deed, it being claimed that it was not capable of being varied or contradicted in its terms and effect by parol evidence as to the lands conveyed thereby, including that conveyed afterwards to D. J. Sullivan. The proposition advanced in the brief is as follows:

"The purpose and intent of the grantor, as expressed in the deed of confirmation, were contained in said instrument in contractual stipulations and recitals, and such contractual recitals and stipulations could not be altered or varied by parol testimony; hence the deed, by virtue of these recitals and stipulations, vested an absolute title in D. Sullivan and in D. J. Sullivan, the grantee of D. Sullivan; that the legal effect of said instrument was to vest in D. Sullivan and his grantees a perfect legal title, and, as the legal effect of the deed could not be varied by parol testimony, the court erred in holding that D. Sullivan and D. J. Sullivan took no title, and erred in divesting them of the title to the property in controversy."

The fallacy of the proposition is in the fact that proof of a trust agreement in reference to a conveyance does not vary or contradict the deed. Such proof does not proceed upon the idea that the deed was not the conveyance it purports to be. It concedes that the title passed by it and that the deed has effect. A deed cannot be set aside or reformed except upon allegations of fraud, mistake and the like, but these allegations are not essential in order to charge the grantee in a deed with a trust in the lands. It is enough for that purpose to allege and prove the understanding and the facts upon which the grantee received the conveyance.

As stated in Clark v. Haney, 62 Texas, 514: "The present case is that of an agreement by the grantee made before conveyance, and as an inducement to it, to hold the lands deeded in trust for certain purposes, and to reconvey when the trust was fully executed. Relying upon his faithful performance of the trust, and to enable him to do so, the deed of conveyance was made with the distinct understanding that it was not to be absolute, but in trust for the purposes agreed on by the parties. To allow the grantee to repudiate the trust after he had obtained the apparent title and gone into possession, to appropriate to himself the

whole benefit of the property, would be to sanction a fraud, and a wrong which it is the duty of a court of equity to prevent or remedy."

In Smith v. Eckford, 18 S. W., 210, this language is found: "The real consideration of the transfer and the intention of the parties may be developed outside of the terms of the written instrument upon allegations of the true intention and consideration, without, we think, the necessity of alleging, in cases like the present (as contended by appellants' counsel must be done), either fraud or mistake in procuring the conveyance in the first instance. The fraud arises from the subsequent perversion of the trust."

There were no contractual matters in the deed in question which the trust agreement would be deemed to vary. The deed contains covenants and recitations, it is true, but none that would not ordinarily be expected to occur in an instrument of its nature. The deed was nothing more than a conveyance, with recitations and covenants appropriate and ordinarily incidental to the vesting of full apparent title, and was not such an instrument as, upon its face, bars all right of the grantor to claim that it was obtained in subordination to a trust understanding. The assignment is overruled.

The fifty-third assignment is practically disposed of by what has been said under the fiftieth assignment.

Under the fifty-fourth assignment the following proposition is what is relied on:

"Where a case is submitted to the jury on special issues, the defendants have the right, when request in writing is so made, to have every material issue constituting defendants' defense submitted to the jury; and when such request is made, and the court fails to grant the same, and such issues are not submitted to the jury, when such issues are necessary to be determined before a judgment could be rendered, the court is without power to render judgment, because as to such matters defendant would be deprived of his right to a trial by jury. In this cause the court was without power to render the judgment, because the court refused, upon request of defendants, to submit the issues to the jury as to whether or not, in making the contract of January 7, 1904, the same was made with the intent to hinder, delay or defraud the creditors of D. R. Fant, and the issue as to whether or not the two judgments rendered in the District Court of Bexar County, Texas, in favor of D. Sullivan & Co. against D. R. Fant, were *res adjudicata* of the matters and things in controversy in this suit. The court therefore erred in not setting aside the verdict of the jury and the judgment of the court, and in not granting defendants a new trial."

Inasmuch, as matters of law, the issues of *res adjudicata* and fraudulent conveyance were not in the case, on the testimony, as we have already held, the proposition is overruled.

The fifty-fifth is not briefed in respect to a statement required by the rules. However, it is predicated upon the assumption that defendants moved the court to file conclusions of law and fact. The assignment refers to bill of exceptions No. 2, as evidencing that such a motion was made. The bill is found in the record, but it is not signed by the judge.

The fifty-sixth assignment of error presents two assignments together, as follows:

"The court erred in its charge in submitting to the jury the following special issues:

"Question No. 12.—What was the reasonable market lease value per acre per annum of the land out of the Santa Rosa Ranch used by D. Sullivan & Co., or J. C. Sullivan and D. J. Sullivan, for the year 1906? Answer, stating number of acres used and the value per acre.

"The court erred in its charge in submitting to the jury the following special issue:

"Question No. 13.—What was the reasonable market lease value per acre per annum of the land out of the Santa Rosa Ranch used by D. Sullivan & Co. or J. C. and D. J. Sullivan, for the year 1907? Answer, stating the number of acres and the value per acre."

The proposition is: "As the plaintiffs alleged that on August 22, 1906, D. Sullivan sold to D. J. Sullivan 49,923.29 acres out of the Santa Rosa Ranch, and this sale was not sought to be canceled, and the title of said D. J. Sullivan to said land was not questioned, the court should, in submitting questions or issues Nos. 12 and 13, have eliminated said 49,923.29 acres from the consideration of the jury."

As the proposition relates to an error, if error at all, that was common to both of the questions, it was proper for appellants to group the assignments. The evidence was uncontroverted that D. Sullivan conveyed 49,923.29 acres of the Santa Rosa Ranch to defendant D. J. Sullivan, on August 22, 1906, and the petition so alleges, and this sale was not questioned, although another one made on the same day was. The answer to the twelfth question was: "10 cents per acre and 85,240 acres." To the thirteenth: "10 cents per acre and 125,230 acres." It seems to us that the assignment is well taken. There may have been no evidence that any of said 49,923.29 acres of D. J. Sullivan was used, and it may not, in fact, have been taken into account by the jury, but the charge authorized them to consider in that connection all the land acquired by D. J. Sullivan, and the very fact of the submission that way was calculated to convey to the jury's mind that there was evidence warranting a finding in reference to the use of all of the land that had been conveyed to D. J. Sullivan. It was affirmative error, and not one merely of omission. It is one, however, which may be cured by a remittitur. The decree shows that for the year 1906 the court allowed plaintiffs $8,524 rental, which was ten cents an acre for 85,240 acres, being for the entire year 1906. D. J. Sullivan acquired the 49,923.29 acres on August 22, 1906, and from that date to the end of the year plaintiffs were not chargeable with rent on said 49,923.29 acres. For 1907 the court allowed rental at ten cents an acre per annum up to May 31, 1907, approximately the date of the trial. The total allowed was $13,741.90. The said 49,923.29 acres of D. J. Sullivan was not subject to this rental for the five months in 1907, nor the four and one-third months in 1906, in all nine and one-third months. In order to rectify this matter it will be necessary for plaintiffs to remit the sum of $3,883, as we calculate it.

Appellee has a cross-assignment in her brief, but it is not found in the record. The record was filed in this court September 14, 1907, and

appellees' brief containing this cross-assignment was filed in this court on February 29, 1908. We have no evidence that the cross-assignment was filed in the District Court at all, and it has not been filed here by consent. The matter complained of by it is not fundamental.

In an additional brief recently filed by appellants certain assignments of error are copied and submitted which were not in the original brief upon which the case was submitted, nor are they presented by consent. They were abandoned, as the rules say they are to be deemed, by not being in the brief, and we therefore cannot consider them.

If the appellees, within seven days, file a remittitur as indicated under the fifty-sixth assignment of error, of $3,883 (or such sum as a proper calculation would give in view of what is said under that assignment, if that sum be not strictly correct), the judgment of the District Court will be affirmed. If not filed, then the judgment will be affirmed in all things, except as to the rental involved in said assignment No. 56, and as to that matter the case will be remanded for further appropriate proceedings.

### ON MOTION FOR REHEARING.

We shall dispose first of appellees' motion for rehearing. One contention is that, notwithstanding the error for which we have required a remittitur (that presented by the fifty-sixth assignment of error), the costs of the appeal should be taxed against appellants. The rule invoked is that, where the error appears clearly to be one which the trial judge would have corrected had his attention been called to it, the costs of the appeal should nevertheless be taxed against appellant. We are unable to say that it is evident the court would have made the correction. The error is one involved in a charge of the court, and presumably in the finding, and not merely an oversight or act of inadvertence. Besides this, the motion for new trial alleged error in the giving of the particular charges, and we cannot say the matter was not called to the attention of the court.

Another point made in appellees' motion is that we should have considered the cross-assignment of error. It is made to appear that appellees' brief containing the cross-assignment was filed in the District Court on February 29, 1908. There was an agreement of counsel that appellants should have until December 1, 1907, to file briefs in this court (which was done on November 30th), and that appellees should have until March 1, 1908, to file theirs, and the latter were filed here on February 29, 1908. The agreement waived the filing of briefs in the District Court. There was no filing of the cross-assignment in the District Court except as it was contained in the brief filed there on February 29, 1908, which was filed in that court more than twenty days —in fact, several months—after appellants' briefs were filed here under the agreement. The agreement did not contemplate that the brief would be filed in the District Court at all. It may be, however, that under these circumstances the cross-assignment should be considered, and upon that theory we shall give our views in regard to its merits.

It is that the court erred in allowing defendants ten percent per annum interest on the sum ascertained to be due them, instead of the legal rate, six percent, for the reason that the pleadings, findings and

judgment established that D. Sullivan & Co. fraudulently prevented Fant from discharging, or attempting to discharge, his indebtedness at maturity. The first impression which this proposition makes is that, if it is correct as a legal proposition, should D. Sullivan & Co. have been allowed any interest at all? Why six percent? The fact is that plaintiffs' case, as made by their pleading and at the trial, was founded upon the insistence that defendants should be allowed ten percent interest upon all sums due them *according to the arrangement made by Dr. Graves.* We quote from the petition:

"That plaintiffs are informed that a portion of said indebtedness of the said D. R. Fant to the said D. Sullivan & Co. has been placed in judgments, the reasons for having been so done not being known to these plaintiffs, but probably because the said D. Sullivan & Co. may have apprehended that the plaintiffs would question a part of said indebtedness, and especially as the interest which was included in said note for $260,000 was usurious, but the plaintiffs are not questioning any of the said indebtedness of the said D. R. Fant to the said D. Sullivan & Co., but are ready, willing, and offer to pay off the same in accordance with the agreement and understanding with the said Amos Graves, Sr., as the agent and representative of the said D. Sullivan & Co., as hereinabove fully set forth, and which said contract and agreement was acquiesced in, confirmed and approved, and in part performed by the said D. Sullivan and D. Sullivan & Co., further specially alleging that the said D. Sullivan & Co., by the sales hereinbefore specifically set forth, have sold a sufficient amount of property, and received therefrom a sufficient amount with and from which to fully and more than pay off and discharge the said indebtedness of the said D. R. Fant to the said D. Sullivan & Co., with interest thereon, including also the expense of handling said property and the ten percent additional as attorneys' fees, or as compensation for continuing and carrying said loan, as well as said amounts which have been paid and advanced to the said Mrs. Lucie A. Fant, the same being and aggregating, according to the statement rendered by D. Sullivan & Co. and evidenced by notes of the said Lucie A. Fant, $11,432.89." We think appellees could not be allowed after the trial to take a different position.

Now, in reference to appellants' motion for rehearing some matters justify further discussion. We find we were in error in reference to the fifty-fifth assignment of error in stating that the bill of exceptions was not signed by the judge. The assignment was, however, properly overruled, for the reason that the failure of the judge to file his conclusions of fact is not ground for reversal where there is a statement of facts. City Nat. Bank of Ft. Worth v. Stout, 61 Texas, 567; Haywood v. Scarborough, 102 S. W., 469.

The fifty-second assignment of error was disposed of by us solely upon the theory that D. Sullivan & Co. could not question Mrs. Fant's title under the gift, on the theory that the gift had been made in fraud of creditors. The question need not have been discussed by us, and we withdraw what the opinion says on the question, as it appears, on a further investigation of the record, that it was an unnecessary discussion, for the reasons now given. There was no error in refusing the requested charge, embodying the issue of fraudulent conveyance, for the reason

that the case was submitted on special issues, and the above was not asked to be submitted as a special issue, but, on the contrary, this and some other requests, which were also refused, were of charges calling for a general verdict.   Moore v. Pierson, 100 Texas, 113.   There being no such special issue submitted, nor asked to be submitted as such, the court was authorized to make the finding from the testimony, and the testimony supporting the finding of the judge against any fraudulent intent was certainly ample.

In addition to this we shall state what appellants claim the testimony consisted of as raising the issue whether or not the contract was made with intent to hinder, delay or defraud creditors of Fant.

1st.   Fant testified that he owed Major Drumm $110,000 or $112,000. But it also appears that this was secured by a chattel mortgage on cattle, and subsequently these cattle paid off the debt except about $15,000.

2d.   He also testified that he owed $37,000 on the Russell judgment. This appears to have been the balance of the purchase price of the Coyote Ranch of 42,000 acres which Fant had purchased for 52,309.58, of which $15,000 was paid in cash, and this balance was secured by a vendor's lien on the land.   This debt was provided for in the trust agreement in question.

3d.   He testified that he owed $30,000 on the Wright Building.   This was secured on the building.

4th.   He owed Groos $12,000 or $13,000.   This also appears to have been secured.

5th.   He owed Mrs. Kelsey $2,800, which Fant also testified was secured by 13,000 acres of land.

6th.   Garcia had a judgment against him for $5,000.

In addition to this evidence appellants rely upon the statement of Fant, in speaking to Dr. Graves while making the agreement: "Well, Doctor, what will my family live on? I ain't got a dollar on God's green earth; I have got nothing to live on.   What will my family do?" This evidently had reference to the matter of ready money.

Now, upon this state of testimony the question arises, was there testimony that would have sustained the affirmative of the issue whether or not Fant had the intent to defraud or hinder his other creditors? The issue would depend, in this case, on whether or not he had reasonably sufficient property remaining, outside of that mortgaged to Sullivan, to satisfy his other creditors, the fraudulent intent depending on the finding as to that fact.   It is a principle of law that fraud should be proved with some degree of clearness, and also a principle that the burden of proof of fraud is upon the party alleging it.   Was there sufficient evidence presented to the jury to enable them to find that Fant's other property was insufficient to satisfy his other creditors, to wit: those above enumerated?   We think not.   The testimony showed, also, that he had what was called the Nopal Mine, which appears to have had a value.

The foregoing testimony shows undisputably that Fant had considerable other property than that included in the transaction in question. It shows, also, that while he had other creditors, these creditors were either provided for in the transaction, or were already secured, and the value of the securities was not developed (with the exception of the

Garcia judgment of $5,000, which appears to have been unsecured). As the evidence stood, we think the jury did not have enough before them to enable them to find as a fact, if that issue had been submitted to them, that Fant's other property was not reasonably sufficient to satisfy his other creditors.

For these reasons, what would have been the rule in reference to Mrs. Fant's right to enforce the trust agreement if the agreement had been shown to be in fraud of creditors is, after all, an abstract question.

In reference to the statements of Dr. Graves, made to W. W. Jones, George West, A. Drumm and D. R. Fant, Jr., we may repeat that we think they were admissible to contradict or impeach the testimony given by the Doctor, and were also admissible, because there was *prima facie* evidence, outside of the statements, that he and defendants were acting in concert, in a scheme to shape matters so that the latter could acquire and hold the property. It was not necessary that the petition should have alleged a conspiracy (as appellants term it) for that purpose in order for statements of Dr. Graves to be admissible as testimony against defendants upon that theory. Brown v. Chenowith, 51 Texas, 475. When evidence was developed that was sufficient to show *prima facie* a conspiracy, a condition of evidence arose which, as a rule of evidence, made the acts and statements of one the acts and statements of the other, provided the jury believed there existed a conspiracy. Of course, as in agency, it would be necessary for the jury to find the fact before they could properly consider the statement as binding on defendants, and defendants would have been entitled to a charge to that effect, which was not asked. The question is as to the propriety of admitting the statements as evidence, and we think there was no error in this respect.

But, independently of the above reasons, there is another which relieves the record of any charge of error in the admission of the statements. In the case of each of said witnesses the defendants caused the witness to give in evidence, in substance, the same statement on cross-examination; in other words, to repeat them. In the case of the witness Jones the question, on cross-examination, was: "Now, what was it he said to you there? Just repeat it." And the witness did so. The evident purpose of this cross-examination was to see whether or not the witness would be consistent in his versions of the conversation. The same is substantially true in regard to the other of said witnesses. The repetition of the objectionable testimony was calculated to emphasize it and to intensify its effect if the witness proved to be consistent, as was the case. We have no doubt that defendant had the right to discredit the witnesses by cross-examination of them, or otherwise, but here what was done by defendants on cross-examination was to have the witnesses repeat the conversations to which objection had been taken, and for a purpose of their own. They saw fit not to stand on their objection to the testimony, but to depart from it, and undertake to defeat its force by experimenting to see if the witness would not impeach himself by stating it differently. In doing this they took the risk of reproducing and emphasizing the objectionable testimony, and, having themselves caused it to be repeated, they cannot claim that it was in evidence over their objection. Eastham v. Hunter, 98 Texas, 560; Gammel v. Montfort, 81

S. W., 1029; Pacific Express Co. v. Needham, 94 S. W., 1070; State v. Moore, 56 S. W., 886; Cropsey v. Averill, 8 Neb., 151; Morrison v. Bryson, 103 N. W., 1016. Both motions are overruled.

*Reformed and affirmed.*

Writ of error refused.