CHANDLER et ux. v. RILEY et al.
(No. 8092.)

(Court of Civil Appeals of Texas. Dallas. March 22, 1919.)

1. JUDGMENTS ⊂⊃271 — ENTRY — CONSTRUCTION OF STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1694, providing that district clerk shall enter all judgments under the direction of the judge, has reference to the amplified decree which goes upon the minutes, and not to the judge's docket entry.

2. EVIDENCE ⊂⊃83(6) — PRESUMPTIONS — OFFICIAL PROCEEDINGS.

Where judge's name does not appear in the blank constituting part of the form required by district court's rule 48 (142 S. W. xxi) following the judgment copied in the transcript, it will be presumed, for the purpose of giving court on appeal jurisdiction of the appeal, in the absence of such attack on the verity of the record as is permitted by law, that the clerk performed his duty in making out and certifying transcript as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 2108, 2114, and that judgment was entered under direction of judge under article 1694, since such direction may be oral.

3. APPEAL AND ERROR ⊂⊃608(1)—JURISDICTION OF COURT—AFFIDAVIT IN LIEU OF APPEAL BOND—DATE OF FILING.

Where clerk, in preparing transcript, indicated time of filing instruments by date at end of each pleading, court on appeal will take jurisdiction, where there is no file mark following affidavit in lieu of appeal bond, and where judgment immediately following such affidavit is followed by file mark; it being obvious that file mark following judgment was intended for affidavit, since judgment is not required to be filed.

4. TRUSTS ⊂⊃95 — CONSTRUCTIVE TRUST — FRAUD.

Generally, where legal title to property has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances rendering it unconscientious for holder of legal title to retain beneficial interest, equity impresses a constructive trust.

5. TRUSTS ⊂⊃96 — CONSTRUCTIVE TRUST — FRAUD.

Where a person acquires legal title to land by means of an intentionally false and fraudulent verbal promise to hold same for a certain specified purpose, or to reconvey, and thereafter retains, uses, and claims property as his own, so that the transaction is in fact a scheme of actual deceit, a constructive trust results.

6. TRUSTS ⊂⊃100 — CONSTRUCTIVE TRUST — PROMISE TO RECONVEY—EXECUTION SALE BY PURCHASER—FRAUD.

Where land is purchased at execution sale under prior fraudulent verbal promise to hold property for benefit of owner and reconvey upon payment of the amount advanced for the purchase price, and purchaser, having obtained

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property for much less than actual value, refuses to abide by verbal promise and retains the land as his own, a constructive trust results in favor of former owner.

**7. TRUSTS ⊕⇒99 — TRUSTS EX MALEFICIO —PROMISE TO CONVEY.**

A mere verbal promise to purchase and convey land does not create an ex maleficio trust; positive fraud accompanying the promise, and by means of which the acquisition of the legal title was obtained, being necessary.

**8. MORTGAGES ⊕⇒512 — FORECLOSURE SALE —RIGHTS OF OWNER—"EXECUTION."**

In mortgage foreclosure sale, owners may divide land and have it sold in lots, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3754, providing that lands not in towns and cities taken "in execution" may be so sold upon owner's compliance with certain formalities; process issued upon judgments decreeing foreclosure of mortgage lien being "execution," within such statutes, in view of articles 2000 and 3729, subd. 3.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Execution.]

**9. PLEADING ⊕⇒228 — INDEFINITENESS — GENERAL DEMURRER—SPECIAL EXCEPTIONS.**

Pleading of right to have land, on mortgage foreclosure sale, sold in small lots under Vernon's Sayles' Ann. Civ. St. 1914, art. 3754, without alleging that the plat and field notes were certified to by the county surveyor as required by such statutes, was sufficient on general demurrer, since such omission could only be reached by a special exception.

**10. PLEADING ⊕⇒228 — DEFECTIVE FORM — SPECIAL EXCEPTIONS.**

Defect in the form or manner of stating a fact should be pointed out by special exception, since a good cause of action, defectively stated, or the omission of a formal, but necessary, averment, is good against a general demurrer.

**11. MORTGAGES ⊕⇒618 — ACTION TO SET ASIDE SHERIFF'S DEED—JURY QUESTION— TIME OF ESSENCE OF CONTRACT.**

In action to cancel sheriff's deed upon ground that purchaser verbally promised plaintiffs to reconvey on payment by plaintiffs of purchase price, the question of whether time was of the essence of such contract was one of fact for the jury under appropriate charge.

**12. CONTRACTS ⊕⇒50—CONSIDERATION.**

A benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made, is a sufficient consideration.

**13. CONTRACTS ⊕⇒56 — CONSIDERATION — MUTUAL PROMISE.**

A mutual promise is a sufficient consideration, if concurrent in point of time.

**14. MORTGAGES ⊕⇒591(3) — CONSIDERATION —PROMISE TO RECONVEY—MORTGAGE FORECLOSURE SALE.**

Promise by purchaser at mortgage foreclosure sale to reconvey land to owner upon owner's payment of purchase price, where as a result of such promise owner refrained from having land sold in parcels, by means of which several hun-

dred acres would have been saved from sale, was based upon a good consideration.

**15. TRIAL ⊕⇒136(1) — REASONABLE TIME — JURY QUESTION.**

What is a reasonable or unreasonable time is generally for the jury.

**16. MORTGAGES ⊕⇒605 — ACTION TO SET ASIDE SHERIFF'S DEED—TENDER.**

In action to cancel sheriff's deed on ground that purchaser promised owner to reconvey on owner's payment of price paid for land by purchaser, it was not necessary for owner to actually tender the money admitted to be due and owing to purchaser into court; an offer to do equity and to perform such decree as the court may enter being sufficient.

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Action by R. F. Chandler and wife against John Riley and others. Judgment of dismissal, and plaintiffs appeal. Reversed and remanded, with directions.

R. L. Williford, of Fairfield, and Adams & Stennis, of Dallas, for appellants.

A. B. Geppert, of Teague, and T. W. Young, of Crockett, for appellees.

RASBURY, J. The appellants, R. F. Chandler and his wife, Mary, sued appellee John Riley, to cancel sheriff's deed to certain lands in Freestone county, claimed thereunder by appellee, and to invest them with title thereto and possession thereof. Tenants in possession were made parties to the suit for purposes unimportant to detail. The facts narrated in the petition, and upon which the prayer for the relief sought was predicated, are in substance these:

March 26, 1915, in cause No. 6262 in the district court of McLennan county, Mary Young obtained judgment against appellants upon their promissory notes for $7,730 with foreclosure of lien upon 1,431 acres of land in Freestone county, given as security for payment of said notes, with award of statutory order of sale, etc. July 1, 1915, in cause No. 5381 in the district court of Freestone county, John Riley, appellee, secured judgment against appellant R. F. Chandler upon debt, also secured by lien upon said 1,431 acres of land above recited, subject to lien in favor of Mary Young, and in addition upon 216 acres of land, and was awarded statutory order of sale, with stay until September 1, 1915. Subsequently orders of sale were issued from both judgments, and the lands described were levied upon and posted for sale according to the respective decrees on December 7, 1915. In order that the lands ordered sold might sell to the greatest advantage, appellants, prior to the sale, caused said lands to be surveyed into 23 tracts of not less than 50 acres each by the county surveyor of Free-

210 SOUTHWESTERN REPORTER

stone county, who also prepared a plat thereof, together with field notes of each tract, and prior to said sale placed the same in the hands of the sheriff, with the request that the lands be sold in tracts according to said plat one at a time and in the order designated by appellants. A few minutes before the sale, and when appellant R. F. Chandler, appellee John Riley, Young, and others had gathered in attendance upon the sale, appellee Riley proposed that appellant Chandler withdraw his request for a sale of the lands in tracts of 50 acres each, and permit Riley to bid in all the lands without competition, on condition that appellee Riley would reconvey said lands to appellant upon payment within 30 days of the amount due under said judgments.

Appellant accepted the offer, and withdrew his request and plat from the sheriff, and the 1,431 acres of land were sold in bulk by the sheriff to appellee Riley for $8,200, the total amount due under the Young judgment, whereas, it was worth $30,000, while 216 acres were sold to appellee Riley for $400 whereas it was worth $4,000 there being, as result of said agreement, no competition at said sale, and but for which a sufficient amount of money to pay off said debts would have been realized by the sale of 1,000 acres of said land. After the sale, upon the representation of appellee Riley that it was necessary that he have possession of the lands before the expiration of the 30 days agreed upon, appellants consented for him to take possession thereof. Before the 30 days expired it was further agreed between the parties that appellee Riley should possess, use, and rent the lands for the year 1916, and appropriate the use and rentals for that year in lieu of the interest on Riley's debt for said year 1917, on condition that appellants would repay the full amount of Riley's debt on or before March 6, 1916. On March 6, 1916, appellee Riley further extended the time in which his debt should be paid to March 20, 1916, in order to cure some slight defect in the title at the request of one who had promised a loan to appellants sufficient to liquidate all debts. On March 15, 1916, one day before the expiration of the last extension, appellants requested from appellee Riley a declaration in writing that he would reconvey said lands upon payment in full of the indebtedness. Riley declined to make such declaration, whereupon appellants announced they would be compelled to resort to court for protection, and whereupon appellee Riley declared no further time for redemption would be allowed.

The lands in controversy were all the lands owned by appellants, and in order to raise money to pay appellee Riley's debt it was necessary to secure its payment by the usual lien thereon, and appellant did procure the promise of loans from several parties suffi-

cient to pay appellee's debt in full before the time agreed upon expired, and said parties were ready, willing, and able to pay appellee said amount upon the transfer of said lands to appellant, or upon a written statement by Riley that he would do so. This appellee Riley refused to do, intending secretly at all times to retain the lands and defeat the efforts of appellant to redeem same. Appellee Riley discouraged prospective lenders, by untrue statements to the effect that appellants would never be able to repay any loan, and by disparaging the value of the lands, and did in such manner and methods prevent appellants, within the time agreed, from securing a loan from T. J. Cole in December, 1915, from Capt. Garrity in December, 1915, from C. Roe Hall in January, 1916, from the American National Insurance Company and others in February, 1916, and but for which the debt would have been paid and the land redeemed. Appellants offered to pay into court all moneys found to be due appellee Riley. Other facts on other and alternative issues were pleaded, but it is not, in the view we take of the case, necessary to recite same.

Among other defenses urged by appellee Riley to appellants' suit was the general demurrer, which on call of the case was sustained, and, appellants declining to amend, judgment was entered against them, and for appellee for costs, from which action this appeal is taken, and error assigned by appellants, but which appellees contend cannot be considered, for the reason that the record discloses affirmatively a want of jurisdiction in this court to consider the appeal.

[1, 2] The first point is that the judgment entry shown in the record was not approved by the district judge, and is hence one that cannot be reviewed by this court. The judgment copied in the transcript is the form that usually follows when the general demurrer is sustained and no amendment made. Following the judgment, and obviously a part of the form required by rule 48, district courts (142 S. W. xxi), to be prepared by counsel for the successful party are the words: "Approved. ———, Judge 77th Judicial District." The district judge's name does not appear in the blank left for that purpose. Upon that fact apparently appellees contend that this court is without jurisdiction. In our opinion the claim is without merit. By article 1694, Vernon's Sayles' Civil Statutes, it is provided that district clerk "shall enter all judgments of the court, under the direction of the judge." Such entry has reference, not to the judge's docket entry, but to the amplified decree, which goes upon the minutes. The article does not require that the judge shall indorse his approval in writing on the form of such amplified decree. It is only required to be entered under his direction, and clearly such direction may be oral, and when the transcript, made out

by the clerk and certified by him as required by articles 2108 and 2114, is filed in this court, the presumption will be indulged that the clerk performed his duty and that the judgment was entered "under direction of the judge," in the absence of such attack on the verity of the record as is permitted by law.

[3] The claim is also made that the affidavit in lieu of appeal bond was never filed in the district court, and for that reason this court is without jurisdiction. In preparing and arranging the transcript, the clerk, instead of showing the time of filing instruments on the margin of the transcript sheets, indicated such dates at the end of each pleading contained in the transcript. The affidavit in lieu of appeal bond is the last paper or pleading shown in the transcript. The time it was filed does not appear immediately beneath the affidavit, as in case of other papers; that which does follow immediately being the judgment of the court that appellants were unable to pay costs, which was in turn followed by a file mark. Judgments are not filed. It is obvious, therefore, that the file mark has reference to the affidavit, and such file mark, showing that the affidavit was filed within the time required by law, did confer jurisdiction upon the court.

It is also urged that we are without jurisdiction because motion for new trial was not filed. It has been held repeatedly that such motion is not necessary to confer jurisdiction on appeals from the action of the trial court in sustaining a general demurrer challenging the sufficiency of the cause of action alleged in the petition.

It is also claimed that the record fails to show notice of appeal. The record does show such notice. We assume the contention is due to oversight.

[4] We will now consider appellants' assignments of error, the first of which challenges the action of the court in sustaining the general demurrer, the effect of which was to declare that the facts related disclosed no legal right in appellants to the relief sought. Appellants argue that the facts related disclose in equity a constructive trust for their benefit, which they were entitled to have enforced at the time suit was commenced, upon their offer to pay whatever money the court might adjudge was due appellee in equity. Constructive trusts, those arising by operation of law from deeds, contracts, acts, or conduct, and enforceable in equity, are, as said by the author presently referred to, "as numberless as the modes by which property may be obtained, through bad faith and unconscientious acts." Various facts have been held to constitute such a trust in as many cases. The underlying rule, however, is of greater importance than the cases:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments, * * * taking advantage of one's * * * necessities, or through any other similar means or under any other similar circumstances, which renders it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust upon the property thus acquired in favor of one who is truly and equitably entitled to the same. * * *" Pom. Eq. Juris., vol. 3, § 1053.

[5] A common form of constructive trusts is that which results when—

"a person acquires the legal title to land * * * by means of an intentionally false and fraudulent verbal promise to hold same for a certain specified purpose, as, for example, a promise * *. * to reconvey it to the grantor, * * * and having thus fraudulently obtained the title, he retains, uses, and claims the property as his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. * * *" Pom. Eq. Juris. vol. 3, § 1055.

In a footnote commencing on page 2038 of the volume just cited, it is said in substance that the doctrine is used with great efficacy to prevent fraud and protect persons under necessities in cases, among others, of execution sale, when land is bought in under prior fraudulent promise that the purchaser will take the title, hold the property for the benefit of the owner, and reconvey upon payment of the amount advanced for the purchase price, and having thus by fraudulent contrivance cut off competition and prevented the owner from making other arrangements to protect his property, and having obtained the property perhaps for much less than its real value, refuse to abide by his verbal promise and retains the land as absolutely his own.

[6] The rule stated is and always has been the rule in this state and all others which we have noticed, and for that reason we consider it unnecessary to cite cases. Brown v. Jackson, 40 S. W. 162, is, however, a case nearly parallel in its facts with the case at bar applying the rule. The facts which we are to accept as true in considering the court's action in sustaining the demurrer have been related. They speak for themselves, and we can add nothing to their meaning or force by presenting them and the inferences and deductions to be drawn therefrom in other, but similar, language and relation. That they disclose a constructive trust, or one ex maleficio, we think is obvious. The request to sell in parcels, the allegations of the petition show, would have realized sufficient funds to pay the indebtedness, and left appellants several hundred acres of land; but, due to the agreement of the parties, on which appellants relied, appellee bid in the land without competition for a sum much less than its real value. Subsequently it was agreed that appellee Riley should have pos-

session and use of the lands during the year 1916, and the time for payment was extended by appellee on three several occasions, at the expiration of the latter of which appellee, upon the failure of appellants to pay the money admitted to be due, declined to grant a further extension of time, and inferentially, at least, asserted title and ownership to the lands. The failure to secure the money to repay the debt up to the time of filing the suit was due, according to the allegations, to the conduct of appellee in defeating the loans sought by appellants on the land, by disparaging appellants' ability to repay and misrepresenting the value of the lands to prospective lenders.

Counsel for appellee, however, for a number of reasons, takes issue with us on the legal conclusions reached, which we will now consider.

[7] It is first contended that the facts alleged at most show a mere verbal promise to purchase and convey land, and that the doctrine of trusts ex maleficio does not apply. If the facts alleged comprehended no more than a naked promise by appellee to purchase and convey land to appellants, the trust relation would not exist. In every case "there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is consummated." 3 Pom. Eq. Jur. § 1056. There is such element in the case at bar, and it is found in the allegation that appellee acquired the title under promise to reconvey, and but for which promise he would not have acquired the title. If the facts alleged be true, the promise to reconvey was false, and hence the title was fraudulently acquired, and the trust relation arises as matter of law.

Appellee asserts that the right to have lands sold in parcels applies only in cases where the land is seized under ordinary execution, and does not apply in cases where land is sold under process issued upon judgments foreclosing liens upon lands, and that as a consequence the alleged agreement is void and unenforceable, because based upon a right that did not exist. By statute it is provided in substance that when lands, not in towns and cities, are taken "in execution," the defendant in the writ may have the same sold in lots by furnishing the officer, at a time that will not delay the sale as advertised, a plat of the land as actually surveyed by the county surveyor in lots of not less than 50 acres, accompanied by field notes of each lot and the certificate of the county surveyor, that same is correct. Article 3754, Vernon's Sayles' Civil Stats.

[8] Appellants proceeded under the article cited when they demanded the sale of their lands in parcels, and the contract between appellants and appellee Riley was entered into under the assumption that appellants were entitled to have the lands sold in lots as directed by that article. We conclude that process issued upon judgments of the kind recited are in contemplation of article 3754, supra, an execution. The requisites of an execution are set out in article 3729, Vernon's Sayles' Civil Statutes, subdivision 3 of which provides, among other requisites, that in case the judgment commands the sale of particular property the writ shall be framed accordingly. The subdivision, it occurs to us, contemplates sales under foreclosure proceedings. It is true that article 2,000, Vernon's Sayles' Civil Statutes, amplifies and deals particularly with the method and manner of selling property under judgments foreclosing mortgages and other liens and declares that in such cases an "order of sale" shall issue; but it also declares that land seized under such order of sale shall be sold as "under execution," and if the property directed to be sold is insufficient to satisfy the judgment to levy such writ "as in case of ordinary executions" on other property of the defendant, which is but to say in final analysis it is an execution. It is true that article 2000, supra, restricts the use of an order of sale as an ordinary execution, since it cannot function in that respect until after sale of the land described therein. Bailey v. Block, 104 Tex. 101, 134 S. W. 323. But that it is equally an execution and an order of sale from the time of its issuance we think is obvious. Executions are judicial writs for the enforcement of judgments, decrees, orders, etc., and are largely what the Legislature declares they shall be.

[9, 10] It is next urged that, even though appellants were entitled to have the lands sold in parcels under article 3754, supra, the demurrer was properly sustained, for the reason that the petition failed to show a compliance with the article. The precise point is that the petition failed to disclose that the county surveyor certified to the correctness of the plat and field notes alleged to have been prepared by him. The petition, while alleging the demand for the sale in parcels, did omit to allege that the plat and field notes tendered to the sheriff were certified to by the county surveyor, though it did allege the survey, preparation of field notes, and platting by that officer. The contention is, in our opinion, without merit, because the reason that the defect pointed out in the brief could not be reached by the general demurrer. Any defect in the form or manner of stating a fact should be pointed out by special exception, since a good cause of action, defectively stated, or the omission of a formal, but necessary, averment, is good against the general demurrer. Appellant's allegation was that he had demanded a sale of the lands in lots, which was sufficient against the general demurrer, but failed to allege that the plat furnished was certified by the county-

surveyor. Such failure was the omission of a formal fact, which could be challenged only by special exception.

[11] It is also urged that time was necessarily of the essence of the contract alleged by appellants, and it appearing from the allegations of their petition that they failed to comply with their original agreement, or the several extensions thereof, by payment of the money at the time agreed on, they were not entitled to the relief sought. The tendency of modern decisions is to hold that time is not ordinarily of the essence of contracts, "unless made so by express stipulation, or unless there is something connected with the purpose of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract must be performed at or within the time named." 13 C. J. 687. Such seems to have been the rule in even the earlier cases in our courts. Edwards v. Atkinson, 14 Tex. 373; Primm v. Barton, 18 Tex. 206; Kirchoff v. Voss, 67 Tex. 320, 3 S. W. 548. There is in the contract alleged by appellants no express stipulation that time was of the essence of the contract, and hence, if time was important, it must be found in the purpose of the contract and the circumstances surrounding it. The purpose of the contract was, of course, to allow appellants further time in which to pay the debt and render appellees' security more efficacious. Some of the circumstances connected with and surrounding the contract tend to indicate that time was important, as witness the brief time allowed originally in which to redeem and the fact that the land was incumbered with a large prior lien. On the other hand, after appellee acquired the land, he not only extended the time for payment, but by agreement with appellants secured the use and possession of the lands for the year 1916, by which he was to apply the rentals and use thereof to the payment of the interest on appellee's debt. We do not believe the facts alleged warrant us in holding as matter of law that time was or was not of the essence of the contract, but that that issue is one of fact for the jury, under appropriate charge.

[12, 13] It is also contended that the agreement alleged is without consideration, and hence unenforceable. A sufficient consideration is a benefit to the party promising or some trouble or prejudice to the party to whom the promise is made; also a mutual promise is sufficient, if concurrent in point of time. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743. The benefit moving to appellee was the acquisition of the title to the land without competition at public sale. The prejudice suffered by appellants was foregoing their legal right to have the lands sold in parcels and the consequent benefits probably resulting therefrom. The rule and the authorities on the point in great number will be found in 13 C. J. 311.

[14, 15] It is next argued that even though the agreement alleged was made it appears from appellants' petition that they never offered to comply with the conditions annexed to the alleged trust until the filing of the suit, and that as a consequence such right was forfeited. The agreement alleged constituting in equity a trust, failure to pay the money at the time agreed upon would not prevent its enforcement unless as we have said at another place time was of the essence of the contract, which we have also said is an issue of fact to be submitted to the jury. Ordinarily suits to enforce the relief here sought, or to rescind contracts, etc., for fraud, must be prosecuted in a reasonable time under all the circumstances. What is a reasonable or unreasonable time is also an issue of fact for the jury. Tex. & Pac. Ry. Co. v. Jowers, 110 S. W. 946; Galveston H. & S. A. Ry. Co. v. Cade, 100 Tex. 37, 94 S. W. 219.

[16] Under the rule as announced in Spann v. Stern, 18 Tex. 556, and followed by all subsequent cases, it was not necessary, in our opinion, for appellants to actually tender into court the money admitted to be due and owing to appellee. An offer to do equity and perform such decree as the court may enter is sufficient.

In the view we take of the case, it is not necessary to review appellants' other assignments of error.

We are also to be understood, when referring to the facts, as having reference to what the allegations of the petition show. The facts will, of course, be developed upon trial.

For the reasons indicated the judgment is reversed, and the cause remanded, for further proceedings consistent with the views herein expressed.

Reversed and remanded.