## BAKER v. GRIFFITH et al.
### No. 2687.

Court of Civil Appeals of Texas. Beaumont.
Feb. 21, 1935.

Rehearing Denied Feb. 27, 1935.

Llewellyn & Dougharty, of Liberty, for appellant.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellees.

O'QUINN, Justice.

Appellant brought this suit in the district court of Montgomery county, Tex., against Morrison E. Griffith and Banks Griffith, Jr., the heirs and devisees of Captain Banks Griffith, to recover the title to 140 acres of land situated in said Mongomery county, described in his petition, to remove cloud therefrom, and to establish a trust therein existing in his favor. In substance, he alleged: That on October 8, 1918, he purchased the 140 acres of land paying cash therefor, but of the cash paid he borrowed $900 from W. H. Clarke and gave said Clarke his note therefor secured by a deed of trust lien on the land. That said note and lien were duly renewed and extended up to November 10, 1927, when said note and lien were sold, assigned, and duly transferred to Banks Griffith, Sr. That on January 16, 1928, said note and lien were again renewed, the renewal note providing for 10 per cent. interest instead of 8 per cent. as stipulated in the original note dated October 8, 1918. That the $90 interest due Banks Griffith, Sr., on January 16, 1929, was paid, but thereafter no further payments of principal or interest were made.

That early in 1932, Banks Griffith, Sr., the holder of said note and deed of trust lien, proposed to appellant that, as there were certain incumbrances (oil leases on small portions) against the land, but which said incumbrances were all subject to said deed of trust lien, it would be beneficial to appellant to have the land sold under the power of sale contained in the deed of trust, and that if such were done he would at such sale purchase the land, thereby freeing it of the other incumbrances, and that he would hold the land in trust for appellant until such time as he, appellant, could pay the debt that he owed to said Banks Griffith, Sr., whereupon he, Banks Griffith, Sr., would deed the land back to appellant. That he agreed to such proposal and arrangement, and, in reliance upon said promise of said Banks Griffith, Sr., to buy in the land at such trustee's sale and hold same in trust for him, and would reconvey said land to him upon his payment to said Banks Griffith, Sr., of the debt owed him, with 10 per cent interest to the date of such payment, he refrained from bidding at said sale and made no attempt to get others to attend the sale and bid for the land, but permitted said Banks Griffith, Sr., to buy the land under their said understanding and agreement without competition from other bidders. That but for said understanding and agreement between him and said Banks Griffith, Sr., he could and would have obtained the money necessary to pay off and satisfy said note and interest, thereby preventing such sale; that the land at the time of the sale was reasonably worth double the amount then actually due said Griffith on the note. That in pursuance of such understanding and agreement between appellant and said Banks Griffith, Sr., at the request of said Griffith the trustee in said deed of trust, after due notice, and in accordance with the power of sale in such deed of trust contained, sold the land on August 1, 1932, and said Griffith bought same, and the trustee on said date executed deed conveying the legal title to said land to said Banks Griffith, Sr. That Banks Griffith, Sr., died on March 7, 1933, leaving a will in which appellees were the legatees and devisees to the entire estate, real and personal, of said Banks Griffith, Sr., which said will was duly probated in Montgomery county on March 27, 1933.

That about April 15, 1933, appellant tendered to appellees, as the legatees and devisees of the estate of said Banks Griffith, Sr., the full amount of the debt due by appellant on said note, with interest and demanded that they, in pursuance of and in execution of the agreement and trust of their testator, reconvey to him the land in controversy, but that appellees refused to accept said tender and offer of payment and refused to reconvey said land to him. Appellant further pleaded his willingness and ability to pay to appellees the full amount of the debt owed by him, and tendered such amount in court; offered to do and perform all things just and equitable that might be required of him by the court. He prayed for judgment establishing the trust in the land and that he was the owner of same free from any claims of appellees; and that he have judgment removing the cloud cast upon his title by the execution and recording of the trustee's deed of August 1, 1932.

Appellees answered by general demurrer; certain special exceptions; general denial; plea of not guilty; that the parol contract alleged by appellant was in violation of the statute of frauds; that said contract was void because not supported by a good and valuable consideration; and, further by special plea that the only contract or agreement made between appellant and Captain Banks Griffith was contained in a written instrument signed by said Griffith, setting out

said instrument in hæc verba, dated August 2, 1932, which was, in substance, that he, Banks Griffith, had under power of sale in deed of trust sold the land in controversy and bought same at the trustee's sale, would reconvey the land, less one-half of the oil, gas, and other minerals in and under same, to appellant upon appellant's paying to him the amount of the note to secure the payment of which the deed of trust was executed, with interest; and further alleged that appellant had accepted the said written agreement and was estopped thereby from asserting his alleged parol agreement with said Griffith.

By supplemental petition, appellant denied generally the allegations in appellees' answer, and specially denied that he had authorized, accepted, or ratified the written instrument plead by appellees; that said instrument did not embody his contract and agreement with said Griffith, in that it provided that said Griffith was to retain for himself one-half of the oil, gas, and other minerals in the land when he reconveyed same to appellant, when the actual contract and agreement between him and said Griffith was that, upon his paying his debt with interest to said Griffith, the land was to be reconveyed to him without any reservations or exceptions; that he, appellant, was not present when said instrument was drawn and signed by said Griffith, and did not know of its contents, but that after becoming informed as to same he protested its correctness to said Griffith, who admitted that a mistake had been made in the particular claimed by appellant, and that he, said Griffith, would have same corrected, but that said Griffith died soon after before having such correction made. Answering further, and pleading in the alternative, appellant asked that if the court should find that said written instrument constituted the contract and agreement between him and said Banks Griffith, instead of the parol contract plead by appellant, he again tendered to appellees the amount due by him to them on said note, and prayed that he have judgment under the said written instrument.

The case was tried to a jury, but upon the conclusion of the evidence both parties moved for an instructed verdict. Appellant's motion was refused and appellees' given, and the jury accordingly returned verdict for appellees, and judgment was so entered. This appeal is from that judgment.

■ Appellees urge that the written instrument pleaded by them and given in evidence, executed by Banks Griffith, Sr., on August 2, 1932, wherein he obligated himself, upon appellant's paying to him the amount he owed with interest, to reconvey to appellant the land less one-half of the minerals, was never accepted by appellant, and so could not afford a basis for recovery thereon by appellant.

We think this contention is sound. Appellant repudiated the instrument as not embodying the terms of his alleged parol agreement with Banks Griffith, and it appears so protested same to Griffith, who admitted its incorrectness in the matter complained by appellant and promised appellant that he would have same corrected, but shortly thereafter died, without any such correction having been made. The written instrument, according to appellant, not embodying the terms of the parol contract and agreement which he asserts was had between him and Banks Griffith, and not having been accepted by appellant, and having been admitted by said Griffith to be incorrect in the very particular complained by appellant, cannot be said, we think, to be the contract, if there was one, between the parties, and so is without force as the basis of a judgment.

■■ We think the record abundantly supports the contention of appellant that Banks Griffith, Sr., the owner and holder of the note and deed of trust lien, did make an oral agreement with him that he, Griffith, would have the land sold under the power of sale contained in the deed of trust, buy in the land, and hold same in trust for appellant, and upon appellant's paying to him the amount of the note, with interest, he would deed the land back to appellant. This is clearly shown by the undisputed evidence of several witnesses, and other facts and circumstances. In fact, we do not understand that appellees contest the facts adduced, but that they contend that the agreement was oral, and, therefore, void because in violation of the statute of frauds (Rev. St. 1925, art. 3995). We overrule this contention. It is the well-settled law of this state that an agreement between a debtor and creditor that the creditor or debt owner will purchase land of the debtor pledged for the payment of the debt at execution or deed of trust sale and hold the land as trustee, subject to reconveyance to the debtor on payment of the debt, is not void because the agreement was oral; in other words, the statute of frauds has no application to such agreements. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Miller v. Thatcher, 9 Tex. 483, 60 Am. Dec. 172; Bailey v. Harris, 19 Tex. 109; Byrnes v. Morris, 53 Tex. 213; Brown v. Jackson (Tex.

Civ. App.) 40 S. W. 162; Lucia v. Adams, 36 Tex. Civ. App. 454, 82 S. W. 335; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507 (writ refused); Matthews v. Deason (Tex. Civ. App.) 200 S. W. 855; Chandler v. Riley (Tex. Civ. App.) 210 S. W. 716 (writ refused); Adcock v. Shell (Tex. Civ. App.) 273 S. W. 900 (writ refused).

■ The contention of appellees that the agreement between appellant and Banks Griffith, Sr., was unenforceable and void because without consideration is also overruled. It is without dispute that appellant agreed with Banks Griffith that he, appellant, would not bid at the sale of the land or make effort to get others to bid. Also that appellant was present at the sale and did not bid or make any effort to get other bidders for the land, and that Griffith did bid in the land without competitive bids. This agreement of appellant, which was scrupulously carried out, was a sufficient consideration for the promise of Griffith to allow appellant to redeem the land on · his payment of the debt. Brown v. Jackson (Tex. Civ. App.) 40 S. W. 162; Chandler v. Riley (Tex. Civ. App.) 210 S. W. 716.

■ That there was no agreed date when appellant was to pay to Banks Griffith the amount he owed him on the note did not render the agreement nugatory because in such case the debt would become due upon demand for payment. No demand for payment was ever made upon appellant, but he tendered to appellees the full amount of the debt and demanded of them that they, as the legatees and devisees of Banks Griffith, Sr., carry out the agreement of their deceased father, and redeed the land to appellant, which they refused to do.

■ It is insisted by appellees that before appellant can have judgment he must plead and prove fraud on the part of Griffith in the making of the agreement with appellant, and that Griffith never intended to carry out the agreement; that appellant has neither pleaded nor proved such fraud. We do not think there is any merit in this contention. In the first place, we do not understand that in creating a parol trust in the conveyance of land it is necessary to show intentional fraud, but that when it appears that when the conveyance of land was taken with an oral understanding that the title was to be held in trust for another to be conveyed to that one upon the happening of the contingency agreed upon, equity will, in such case, upon a refusal to reconvey, compel a performance of the trust. But aside from that fea-

ture of the instant case, while there is no pleading by appellant denominated "fraud" upon the part of Banks Griffith, Sr., in the making of the agreement with appellant, there is a complete pleading of facts that, while exonerating Banks Griffith of any fraudulent intent, shows that to permit appellees to ignore the agreement of their deceased father (which all the evidence shows he would have scrupulously lived up to) and to refuse to carry out same, would not only be inequitable, but a fraud wrought by them upon the rights of appellant.

■ The facts that appellant and Banks Griffith, Sr., had an oral agreement that Griffith should sell the land at trustee's sale, buy same in, and hold the title thereto in trust for appellant until appellant paid said Griffith the amount due on the note he owed to him, when Griffith would deed the land to appellant; that appellant would not bid for the land at such sale, nor get others to bid; that appellant was at the sale and did not bid for the land nor attempt to get others to do so; that said Griffith did, under the agreement, buy in the land and take deed thereto; that after said sale said Griffith stated in substance to several witnesses, namely, to N. W. Robertson, that the sale was a friendly foreclosure between him and appellant to clear up the title, and when Baker paid him he was going to deed the land back to appellant; to J. S. Hunt that he would deed the land back to Baker when he could pay for it; to J. W. Simpson, who was trying to get a lease on the land from Griffith, that the land belonged to Baker, that the land was not his, Griffith's, and that anything done about leasing the land would have to be done by Baker; to John Thomas, who also was trying to lease the land, that the sale of the land was a friendly foreclosure and that as soon as Baker could raise the money to pay him what he owed him he would deed it back to him; to Sam Goyens, who wanted to lease the land, that he did not consider that he had anything to do with leasing the land, that whatever trade he made with Baker would be satisfactory, that he held the land for Baker's protection, and that the land still belonged to Baker (this statement to Goyens was made in the presence of Allen Lockhart, who also testified to same); to T. E. Jentry, in talking about foreclosing the lien to clear the title for Baker so that there would be no mineral sales against it, when Jentry said, "If you are kind enough to do this it will seem as if he ought to give you part of the minerals for doing it," and Griffith said: "I don't want Joe's (Baker's) minerals. All I want is the

money I have loaned him with interest"; to Sam Goyens, who tendered to him the payment of some rentals that were due on a lease of a portion of the land, that the land belonged to Baker and to pay the rentals to Baker; to Baker, on Saturday night before he died on the following Tuesday, that the clause in the written instrument executed by him on March 2, 1932, after the sale was made on the day before, and retaining one-half of the minerals if and when the land was deeded back to Baker, upon Baker's paying the full amount of the debt he owed Griffith, that said clause of retention of one-half of the minerals was wrong, that the party drawing up the instrument misunderstood the matter, and that he, Griffith, would correct it, and when Baker asked him when he would make the correction, he replied that on the following Monday he felt he would be able to be down town and would then attend to the matter. (Griffith was in bed sick at the time, and died on the following Tuesday). These further facts were also without dispute: When the sale under the deed of trust was made and the land bought by Griffith, Baker's note was not canceled, receipted, nor delivered to Baker, but was retained by Griffith, and was among his effects when he died, and at the date of the filing and trial of this suit, and was offered in evidence by appellees. Baker remained in possession of the land after the sale, using and paying taxes on same, and was not called upon to nor did he pay any rent for the use of the place. Griffith's statement to the various parties mentioned above that the foreclosure was friendly; that the land was not his, but Baker's; and that all he wanted was for Baker to pay him the amount of his note with interest, and then he was going to deed the land back to Baker, and Baker all the time acknowledging the debt and his liability to pay same, all these facts show, without dispute, that neither Baker nor Griffith considered the note extinguished by the deed of trust sale, but, to the contrary, that it still existed, and so entitled appellant to make payment of same and have conveyance of the legal title to the land as intended and contracted by appellant and Griffith, and the judgment below should have been accordingly.

 Relative to the controversy as to the amount due on the note: Upon the undisputed facts, we conclude that the note simply providing for interest from date until paid did not warrant compounding of the interest annually. Also, the foreclosure being a friendly proceeding, not a suit, the charge for attorney's fees was not justified.

The note was not placed in the hands of the trustee, who was an attorney, for collection, but for a friendly sale of the land under the power of sale granted in the deed of trust, and that, under the undisputed facts, no collection was made, the note was not extinguished, or the debt discharged, but the debt, the note, and interest thereon, continued as an obligation due to the owner and holder of the note. There being no collection of the note, but the amount of the obligation continuing in full after the trustee's sale, there was no commission to be allowed. The amount of taxes paid by Griffith, shown to have been covered by a note of Baker's with lien on personal property to secure the payment of same, was not a proper item to be added in summing up the amount due on the land note in question. We find that the principal of the note on January 16, 1928, was $900. That same bore interest at the rate of 10 per cent. per annum from date until paid. That the interest from January 16, 1928, to January 16, 1929, was paid. That interest on the note from January 16, 1929, until the date of the trustee's sale, March 1, 1932, amounted to $318.75, which added to the principal made $1,218.75 due on the date of the sale. We further find that during the trial appellant posted with the court $1,500 to cover his previous tender of payment. That 10 per cent. interest on $1,218.75, the amount due on the date of the sale, to the date of the judgment, February 1, 1934, amounted to $162.50, which made the whole sum due on that date $1,391.25.

From what we have said, it follows that the judgment of the trial court should be reversed, and judgment here rendered for appellant for the title and possession of the land; and that appellees have judgment for the sum of $1,391.25 to be paid out of the funds of appellant deposited with the court, and it is so ordered. All costs of suit will be taxed against appellees.

### On Motion for Rehearing.

At a former day of this term of this court, we reversed the judgment of the trial court and rendered judgment for appellant Baker for the title and possession of the land in controversy; and that appellees have judgment against appellant Baker for the sum of $1,391.25, the same to be paid out of the funds of appellant deposited with the court; and that all costs of suit be taxed against appellees.

Appellees have filed motion for rehearing assigning many errors against our said judgment. Among the assigned errors is one

(sixteenth) complaining that we erred in rendering judgment for appellees in the sum of $1,391.25, insisting that said amount should have been more. Appellant agrees that in arriving at said amount we were in error, and that the judgment for appellees should have been in the sum of $1,506.06. The grounds of this admission by appellant are (a) that the court erred in using the date March 1, 1932, as the date of the trustee's sale, instead of August 1, 1932, the true date of said sale, to which interest on the note should be calculated; and (b) that in considering the interest on the note in the sum of $90 for the year January 16, 1928, to January 16, 1929, to have been paid, to have not been disputed, was error in that appellees did not admit such payment, and, therefore, said amount could not be credited against the interest due. Correcting these matters, the amount of the judgment for appellees should have been $1,506.06, and it is ordered that the original judgment be corrected to so show. The amount deposited with the court by appellant to cover the amount due on the note was $1,500. The amount adjudged to appellees as due is $1,506.06, slightly more than the deposit. But as appellant has judgment for all costs, and the record showing that he paid the costs of preparing the transcript and statement of facts in the sum of $163.50, for which he is entitled to be reimbursed by appellees out of the amount of the judgment in their favor against him, there will remain of said $1,500 deposit more than sufficient to satisfy the judgment herein rendered against him. Correcting and modifying 'the judgment as above indicated, the motion for rehearing is overruled.