MORRISON E. GRIFFITH ET AL. V. J. W. BAKER.

No. 6909.  Decided July 7, 1937.
(107 S. W., 2d Series, 371.)

18

*Vinson, Elkins, Sweeton & Weems,* of Houston, for plaintiff in error.

The Court of Civil Appeals was not justified in rendering judgment for plaintiff for the reason that the contention of plaintiff's theory of the suit is not established by the undisputed testimony, there being at least sufficient conflict to raise an issue of fact for the jury. Tabor v. Zavala County Bank, 90 S. W. (2d) 650; Tanner v. Drake, 124 Texas 395, 78 S. W. (2d) 162; Foster v. Ross, 77 S. W. 990.

*Geo. E. Reeves,* of Houston, and *Llewellyn & Dougharty,* of Liberty, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Defendant in error, J. W. Baker, brought this suit in the district court of Montgomery County, Texas, against plaintiffs in error, Morrison E. Griffith and Banks Griffith, devisees under the will of Captain Banks Griffith, deceased. The parties will be designated as in the trial court. The suit was for the recovery of 140 acres of land in Montgomery County on the theory that the same was impressed with a trust in favor of plaintiff. The essential facts may be thus briefly stated.

The 140 acres of land in question was acquired by plaintiff October 8, 1918, and he executed a deed of trust lien thereon to

secure the payment of $900.00 of the purchase money. On November 10, 1927, this note with the lien was assigned to Captain Banks Griffith. It was renewed on January 16, 1928, the renewal note providing for 10 per cent. interest per annum. The first annual installment of interest was paid on January 16, 1929, and no payment was thereafter made. On August 1, 1932, after due notice, sale was made under the deed of trust by substitute trustee and Captain Griffith became the purchaser. The consideration recited in the deed was an amount which was recited to be equal to the sum of all the indebtedness then due under the deed of trust. On March 7, 1933, Captain Griffith died leaving a will, which was duly probated, and in which defendants were named as devisees.

This suit was filed on the 18th day of May, 1933, and the allegations upon which plaintiff relied for setting aside the trustee's sale and recovering the property have been summarized by the Court of Civil Appeals in the following statement:

"That early in 1932, Banks Griffith, Sr., the holder of said note and deed of trust lien, proposed to appellant that, as there were certain incumbrances (oil leases on small portions) against the land, but which said incumbrances were all subject to said deed of trust lien, it would be beneficial to appellant to have the land sold under the power of sale contained in the deed of trust, and that if such were done he would at such sale purchase the land, thereby freeing it of the other incumbrances, and that he would hold the land in trust for appellant until such time as he, appellant, could pay the debt that he owed to said Banks Griffith, Sr., whereupon he, Banks Griffith, Sr., would deed the land back to appellant. That he agreed to such proposal and arrangement, and, in reliance upon said promise of said Banks Griffith, Sr., to buy in the land at such trustee's sale and hold same in trust for him, and would reconvey said land to him upon his payment to said Banks Griffith, Sr., of the debt owed him, with 10 per cent. interest to the date of such payment, he refrained from bidding at said sale and made no attempt to get others to attend the sale and bid for the land, but permitted said Banks Griffith, Sr., to buy the land under their said understanding and agreement without competition from other bidders. That but for said understanding and agreement between him and said Banks Griffith, Sr., he could and would have obtained the money necessary to pay off and satisfy said note and interest, thereby preventing such sale; that the land at the time of the sale was reasonably worth double the amount then actually due said Griffith on the note. That in pursuance of such

understanding and agreement between appellant and said Banks Griffith, Sr., at the request of said Griffith the trustee in said deed of trust, after due notice, and in accordance with the power of sale in such deed of trust contained, sold the land on August 1, 1932, and said Griffith bought same, and the trustee on said date executed deed conveying the legal title to said land to said Banks Griffith, Sr. That Banks Griffith, Sr., died on March 7, 1933, leaving a will in which appellees were the legatees and devisees to the entire estate, real and personal, of said Banks Griffith, Sr., which said will was duly probated in Montgomery County on March 27, 1933.

"That about April 15, 1933, appellant tendered to appellees, as the legatees and devisees of the estate of said Banks Griffith, Sr., the full amount of the debt due by appellant on said note, with interest and demanded that they, in pursuance of and in execution of the agreement and trust of their testator, reconvey to him the land in controversy, but that appellees refused to accept said tender and offer of payment and refused to reconvey said land to him. Appellant further pleaded his willingness and ability to pay to appellees the full amount of the debt owed by him, and tendered such amount in court; offered to do and perform all things just and equitable that might be required of him by the court. He prayed for judgment establishing the trust in the land and that he was the owner of same free from any claims of appellees; and that he have judgment removing the cloud cast upon his title by the execution and recording of the trustee's deed of August 1, 1932."

There was evidence on the part of plaintiff which justified a finding in his favor upon all of the material allegations set out above.

The defendants answered contending that the contract alleged by plaintiff was in violation of the Statute of Frauds, and was not supported by a valuable consideration. By special plea it was alleged that the only contract or agreement made between plaintiff and Captain Griffith was contained in a written instrument, signed by said Griffith, dated August 2, 1932, which instrument was set out in haec verba and was, in substance, that he, Banks Griffith, had under power of sale in deed of trust sold the land in controversy and bought same at the trustee's sale, and would reconvey the land, less one-half of the oil, gas and other minerals in and under same, to plaintiff upon plaintiff paying to him the sum of $1,723.35, with interest at 10 per cent. It was further alleged that plaintiff had accepted said written agreement and was estopped from asserting the parol agreement alleged by him.

In addition to the written agreement executed by Griffith on August 2, 1932, defendants offered the evidence of one or more witnesses to the effect that the only agreement which Griffith had made with plaintiff was the one evidenced by the written contract.

Upon conclusion of the testimony the trial court instructed a verdict in favor of defendants, and judgment was entered thereon to the effect that plaintiff take nothing. It seems to be assumed by all parties that this action of the court was based upon a holding that the parol agreement upon which plaintiff relied was in contravention of the Statute of Frauds, or was without consideration, and was unenforceable. Upon appeal the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of plaintiff for the land in controversy, conditioned upon payment by plaintiff of a certain sum found by the court as the amount of the indebtedness which he was to pay under the agreement alleged by him. 79 S. W. (2d) 626.

As the judgments of both the trial court and the Court of Civil Appeals should be reversed, under the view we have taken of the case, it is unnecessary to go into a discussion of the several questions presented.

The trustee sale was made August 1, 1932. On August 2, 1932, Joe Strode, attorney for Captain Griffith, under instructions from Griffith, prepared a written agreement, reciting the facts of the sale and the purchase of the property for a consideration of $1,723.35, and obligating Griffith to reconvey the property to Baker. This was conditioned upon his reserving one-half of the oil, gas and minerals in the land, with right to one-half of all rentals and bonus money, and conditioned upon plaintiff paying the sum of $1,723.35 with 10 per cent. interest. Captain Griffith signed this instrument and left it with Mr. Strode. It is admitted by plaintiff that sometime about the last of August, 1932, he went to Mr. Strode's office and the contract signed by Captain Griffith was handed to him by Mr. Strode. He did not read it then, but did read it when he reached home. He admitted that he fully understood same. He further admitted that he retained the instrument in his possession and did not mention the matter to Captain Griffith until three days before his death, which occurred March 7, 1933. Some two or three months after execution of the contract Captain Griffith met plaintiff and asked him if he had gotten the same from Mr. Strode and plaintiff told him that he had. Plaintiff did not then make any complaint whatever with reference to the contents of the contract. Plaintiff testified that on Saturday before Cap-

tain Griffith's death on Tuesday he called at the home of Captain Griffith and asked him to sign a lease on the land. He then advised Captain Griffith that he intended to hold out 100 acres from the block of land which he had assembled in order that he could sell a lease on same and pay the amount of the indebtedness. He then testified as follows:

"I said, 'Cap, do you realize if I held one hundred acres of this and sold the lease for $35.00 an acre I would not get a thing out of it?'

"He said, 'How do you figure that?'

"I said, 'That instrument says that you intend to deed the land back to me when I pay the money less half the money of the leases, rentals, and mineral royalties.' I said, 'If I got thirty-five hundred dollars you would get one half of it, and I would not get anything.'

"He said, 'Does that instrument read like that? Just one second. Read it.' He said, 'Get it.' He said, 'If it does, we will change it.'"

From the foregoing we think it appears as a matter of law that plaintiff accepted the written contract, and that it superseded the alleged oral agreement. Having gone to the office of Mr. Strode for the instrument, and having taken it home and retained it in his possession for six months, with full knowledge of its contents, without any complaint to Captain Griffith until three days before his death, acceptance is shown as a matter of law. Besides, the statement quoted above shows that he was relying upon this very contract, instead of the parol one, else he would not have been complaining of its harshness and in asking for its reformation. Even at the time of the conversation with Captain Griffith he did not advise Captain Griffith that he had not accepted the contract, and said nothing about the parol one, but merely sought to show that one term of the contract was unfavorable to him. He did not even claim that it was not in accordance with the oral agreement. After the death of Captain Griffith plaintiff turned this contract over to his attorneys, and in his petition pleaded for recovery upon it in the alternative.

We think the trial court should have held as a matter of law that plaintiff had accepted this contract and could not rely upon the parol agreement alleged by him. If the court had so held, plaintiff would have perhaps elected to take a recovery in accordance with its terms. In view of the fact that defendants in their pleadings admitted that the real contract was the one signed by Captain Griffith, we think it but equitable to yet allow plaintiff a recovery thereunder if he elects to do so. Having ac-

cepted the contract, he is bound according to its terms, and must pay the amount therein specified with interest to the date of the tender.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause is remanded, with instructions to the trial court to enter judgment in favor of plaintiff for the land in controversy, on the basis of the written contract of August 2, 1932, provided plaintiff shall perform the conditions thereof; otherwise to enter judgment that plaintiff take nothing.

Defendant in error should pay all costs of appeal in this Court, and plaintiffs in error should pay all costs of appeal in the Court of Civil Appeals.

Opinion adopted by the Supreme Court July 7, 1937.